IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

**SHELBIE DAWN SCHWEITZER**
339 Fletcher Avenue, Apartment 10
Lincoln, Nebraska 68521

      Plaintiff,

v.

**PREFERRED FAMILY HEALTHCARE, INC.**
<u>Serve Registered Agent:</u>
Michael T. Schwend
900 East LaHarpe
Kirksville, Missouri 63501

and

**SPRINGFIELD PARTNERS, LLC**
<u>Serve Registered Agent:</u>
Joseph D. Sheppard, III
2805 South Ingram Mill Road
Springfield, Missouri 65804

      Defendants.

Case No:

**JURY TRIAL DEMANDED**

## COMPLAINT

Plaintiff Shelbie Dawn Schweitzer, by and through her attorneys of record, and for her Petition against Defendants Preferred Family Healthcare, Inc. and Springfield Partners, LLC, states and alleges as follows:

## TYPE OF ACTION

1. This is an action for compensatory and punitive damages arising under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, as amended by the Pregnancy Discrimination Act of 1978 (collectively, "Title VII"), the Americans with Disabilities

Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and other federal laws and regulations prohibiting employment discrimination on the basis of sex and disability.

2. Plaintiff, while employed by Defendants, was subjected to unlawful discrimination based on her gender.

3. Plaintiff, while employed by Defendants, was subjected to unlawful discrimination based on her disability.

4. Defendants failed to accommodate Plaintiff's disability.

5. Plaintiff, while employed by Defendants, was subjected to unlawful retaliation because she requested a reasonable accommodation for her disability.

## PARTIES

6. Plaintiff is a female residing in Lincoln, Nebraska.

7. Upon information and belief, Defendant Preferred Family Healthcare, Inc. ("PFH") is a Missouri corporation doing business in Greene County, Missouri, and is an employer within the meaning of Title VII and the ADA.

8. Springfield Partners, LLC ("Springfield Partners") is a Missouri corporation doing business in the state of Missouri, and is an employer within the meaning of Title VII and the ADA.

9. At all times mentioned herein, before and after, the perpetrators described in this Petition were agents, servants, and employees of Defendants and were at all such times acting within the scope and course of their agency and employment, or were acting as a "proxy" or "alter-ego," and/or their actions were expressly authorized by Defendants and/or their actions were ratified by Defendants, thus making Defendants liable for said actions under the doctrine of respondeat superior.

## JURISDICTION AND VENUE

10. This Court has jurisdiction of this employment discrimination claim, and venue properly lies in this judicial district pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 2000e-5(f)(3). Plaintiff seeks damages in an amount in excess of seventy-five thousand dollars.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

11. On or about November 17, 2017, Plaintiff timely filed her Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). A copy is attached hereto and incorporated herein as Exhibit "A."

12. Plaintiff was issued a Notice of Right to Sue on or about April 8, 2019 from the EEOC. A copy of Plaintiff's Right to Sue is attached hereto and incorporated herein as Exhibit "B."

13. Plaintiff filed this action within ninety (90) days of the receipt of the Right to Sue letter. Therefore, Plaintiff's lawsuit is timely.

14. Plaintiff has properly exhausted all administrative remedies.

## GENERAL ALLEGATIONS

15. Plaintiff is a female who was pregnant at the time of her termination by Defendants.

16. Plaintiff was hired by Defendants in or about October 2016 to be a Foster Care Case Manager.

17. At the time that Defendants hired her, Plaintiff was living in Nebraska.

18. Plaintiff and her family moved to Missouri on or about November 5, 2016 to begin her new position with Defendants.

19. On or about November 7, 2016, Plaintiff began her employment as a Foster Care Case Manager based at Defendants' 1111 South Glenstone Avenue, Springfield, Greene County, Missouri office.

20. As a Foster Care Case Manager, Plaintiff was frequently out of the office for meetings at court and meetings with families.

21. Other Foster Care Case Managers were also frequently out of the office for court meetings and family meetings.

22. Defendants' Foster Care Case Managers frequently worked from home.

23. Plaintiff discovered that she was pregnant shortly after beginning her employment with Defendants.

24. During pregnancy, Plaintiff suffered from Hyperemesis Gravidarum ("hyperemesis"), a condition that caused Plaintiff to experience severe nausea, dehydration, weight loss, malnutrition, and electrolyte disturbance.

25. As a result of the hyperemesis, Plaintiff was vomiting over twenty times per day and her organs were beginning to shut down.

26. On or about December 30, 2016, Plaintiff visited the emergency room at Cox Medical Center South for her hyperemesis symptoms.

27. Plaintiff received medication to assist with her hyperemesis symptoms, but the medication did not resolve Plaintiff's hyperemesis.

28. The next workday, on or about January 3, 2017, Plaintiff informed her supervisor, Rebecca Allee, that she had been in the emergency room due to vomiting and being sick.

29. Ms. Allee told Plaintiff to take her laptop and work from home.

30. In or about early January 2017, Plaintiff told Ms. Allee that her physician had advised her to remain off work, but that she planned to work from home instead.

31. Ms. Allee continued to allow Plaintiff to work from home.

4

32. Plaintiff did not disclose her pregnancy to Ms. Allee or to any of Defendants' employees at this time.

33. On or about January 5, 2017, Plaintiff attended a meeting with Ms. Allee at the office to discuss Plaintiff's work performance.

34. Ms. Allee gave Plaintiff a positive review.

35. On January 9, 2017, Plaintiff's physician, Dr. P. Michael Kidder, issued a back-dated doctor's note advising Plaintiff to remain off work from January 1, 2017 to January 14, 2017.

36. "Primrose OB/GYN" was plainly printed at the top of Plaintiff's doctor's note.

37. Plaintiff presented the doctor's note to the person at the front desk of her office and her physician's office submitted the note to Defendants via facsimile.

38. Plaintiff decided to work from home instead of remaining off work as her doctor had advised because she was a new employee.

39. Plaintiff continued to regularly attend meetings in the office and meetings with the families that she served.

40. None of Plaintiff's co-workers or supervisors showed any disapproval to Plaintiff because she was working from home.

41. Plaintiff was able to fully perform her regular job duties while working from home.

42. Primrose OB/GYN issued Plaintiff another doctor's note on January 16, 2017 advising her to remain off work on January 16, 2017.

43. Plaintiff's physician's office submitted the note to Defendants via facsimile.

44. Primrose OB/GYN issued a third doctor's note on January 17, 2017 advising Plaintiff to remain off work from January 17, 2017 through January 20, 2017.

45. Plaintiff presented the third doctor's note to the front desk at her office and her physician's office submitted the note to Defendants via facsimile.

46. Plaintiff continued to work from home, attend meetings, and successfully perform all of her regular job duties.

47. Plaintiff's co-workers and supervisors continued to show no disapproval to Plaintiff for her need to work from home.

48. On or about January 23, 2017, Plaintiff was hospitalized due to hyperemesis.

49. Plaintiff called Ms. Allee from the hospital on January 23, 2017 and informed her that she was in the hospital and did not yet have a doctor's note.

50. Ms. Allee asked Plaintiff if she was pregnant.

51. Plaintiff admitted to Ms. Allee that she was pregnant.

52. On or about January 24, 2017, Ms. Allee called Plaintiff while she was still in the hospital and informed Plaintiff that Defendants could not hold her position anymore.

53. Ms. Allee told Plaintiff that if she turned in a doctor's note for her hospitalization, she would be eligible for rehire once she delivered the baby.

54. Plaintiff remained in the hospital until on or about January 26, 2017 or January 27, 2017.

55. On or about February 6, 2017, Courtney Meek, an employee of Defendants, sent Plaintiff a message via Facebook asking her to return all of her work equipment.

56. Plaintiff had already signed up for Defendants' health insurance and disability benefits before termination.

57. Upon information and belief, Plaintiff's health insurance and disability benefits would have become active shortly after she was terminated by Defendants, on or about February 7, 2017.

## COUNT I
## TITLE VII – DISPARATE TREATMENT BASED ON SEX

58. Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

59. Plaintiff is a female who was pregnant during her employment with Defendants.

60. At all times pertinent hereto, Plaintiff was performing her job adequately and meeting her employers' expectations.

61. Plaintiff was terminated by Defendants and her pregnancy was a motivating factor for such termination.

62. Upon information and belief, Plaintiff was replaced by another individual who was not pregnant.

**WHEREFORE**, Plaintiff prays for judgment against Defendants for such damages as are fair and reasonable, including lost wages and other benefits of employment, compensatory damages, punitive damages, pre- and post-judgment interest, future lost wages and benefits of employment, attorney's fees and costs, and for such other and further relief as the Court deems just and proper.

## COUNT II
## ADA - FAILURE TO ACCOMMODATE

63. Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

64. Plaintiff, while employed by Defendants, suffered from the disability of hyperemesis Gravidarum, a physical impairment that substantially limited one or more major life activities, including but not limited to eating, standing, walking, caring for herself, lifting, traveling, and socializing.

65. At all times pertinent hereto, Plaintiff was performing her job adequately and meeting her employers' expectations.

66. Plaintiff informed Defendants that she had been hospitalized for vomiting and being sick.

67. Plaintiff requested the reasonable accommodation of working from home as a result of her disability.

68. The accommodation of working from home would have enabled Plaintiff to work more productively, to the benefit of Defendants, and providing such time would not have posed an undue hardship on Defendants.

69. Defendants knew that Plaintiff was pregnant and chose not to allow Plaintiff to continue working from home.

70. Defendants failed to provide a reasonable accommodation to Plaintiff.

71. Accordingly, Defendants harmed Plaintiff by failing to provide her with a reasonable accommodation in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq*.

**WHEREFORE**, Plaintiff prays for judgment against Defendants for such damages as are fair and reasonable, including lost wages and other benefits of employment, compensatory damages, punitive damages, pre- and post-judgment interest, future lost wages and benefits of employment, attorney's fees and costs, and for such other and further relief as the Court deems just and proper.

### COUNT III
### ADA - DISPARATE TREATMENT BASED ON DISABILITY OR PERCEIVED DISABILITY

72. Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

73. Plaintiff, while employed by Defendants, suffered from the disability of hyperemesis Gravidarum, a physical impairment that substantially limited one or more major life

activities, including but not limited to eating, standing, walking, caring for herself, lifting, traveling, and socializing.

74. At all times pertinent hereto, Plaintiff was performing her job adequately and meeting her employers' expectations.

75. Plaintiff was terminated by Defendants and her disability or perceived disability was a motivating factor for such termination.

76. Upon information and belief, Plaintiff was replaced by another individual who was not disabled or perceived to be disabled.

**WHEREFORE**, Plaintiff prays for judgment against Defendants for such damages as are fair and reasonable, including lost wages and other benefits of employment, compensatory damages, punitive damages, pre- and post-judgment interest, future lost wages and benefits of employment, attorney's fees and costs, and for such other and further relief as the Court deems just and proper.

## COUNT V
## ADA – RETALIATION

77. Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

78. Plaintiff engaged in the protected activity of requesting a reasonable accommodation for her disability.

79. After Plaintiff requested a reasonable accommodation for her disability, Defendants unlawfully retaliated against Plaintiff by terminating her employment.

80. Plaintiff's request for a reasonable accommodation was a motivating factor in Defendants' decision to terminate her employment.

**WHEREFORE**, Plaintiff prays for judgment against Defendants for such damages as are fair and reasonable, including lost wages and other benefits of employment, compensatory

damages, punitive damages, pre- and post-judgment interest, future lost wages and benefits of employment, attorney's fees and costs, and for such other and further relief as the Court deems just and proper.

## JURY TRIAL DEMAND

PLAINTIFF REQUESTS A TRIAL BY JURY AS TO ALL ISSUES SO TRIABLE.

**Burkhart Law, LLC**

*/s/ Kyle E. Murphy*
Brandon D. Burkhart – MO Bar 65815
Bailey M. Privette – MO Bar 69220
Kyle E. Murphy – MO Bar 69739
4233 Roanoke Road, Suite 100
Kansas City, Missouri 64111
Phone: (816) 945-6467
Facsimile: (816) 945-6314
brandon@burkhartlegal.com
bailey@burkhartlegal.com
kyle@burkhartlegal.com
ATTORNEYS FOR PLAINTIFF