# UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
## SOUTHERN DIVISION

**SHELBIE DAWN SCHWEITZER,**

      Plaintiff,

v.

      Case No.: 6:19-CV-03240-MDH

**PREFERRED FAMILY HEALTHCARE, INC., et al.,**

      Defendants.

---

### PLAINTIFF'S SUGGESTIONS IN OPPOSITION TO DEFENDANT PREFERRED FAMILY HEALTHCARE, INC.'S MOTION FOR SUMMARY JUDGMENT

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ 2

I.    INTRODUCTION ................................................................................................ 3

II.    PLAINTIFF'S RESPONSES TO DEFENDANT'S "STATEMENT OF UNCONTROVERTED MATERIAL FACTS"................................................................................................ 3

III.    PLAINTIFF'S STATEMENT OF ADDITIONAL UNCONTROVERTED MATERIAL FACTS ................................................................................................ 18

IV.    STANDARD OF REVIEW ................................................................................................ 24

V.    ARGUMENT ................................................................................................ 25

    A.    Plaintiff Requested A Reasonable Accommodation In Compliance With The ADA And Defendant Failed To Properly Address Plaintiff's Need For Accommodation Throughout Her Employment................................................................................................ 25

    B.    There Are Genuine Issues Of Material Fact As To Whether Plaintiff Was Able To Perform The Essential Functions Of Her Position With Or Without A Reasonable Accommodation ................... 27

    C.    There Are Genuine Issues Of Material Fact As To Whether Defendant Was Able To Accommodate Plaintiff................................................................................................ 31

    D.    Plaintiff Was Qualified To Do Her Job As A Foster Care Case Manager Under Title VII....... 33

    E.    Genuine Issues of Fact Exist Concerning Whether Defendant's Proffered "Legitimate, Non-Discriminatory" Reason For Plaintiff's Termination Is Pretextual.................................... 34

    F.    Plaintiff Properly Exhausted Her Administrative Remedies As To Her Retaliation Claim ....... 37

    G.    There Are Genuine Issues of Material Fact Regarding The Causal Relationship Between Plaintiff's Request For An Accommodation and Plaintiff's Termination ......................... 39

VI.    CONCLUSION................................................................................................ 40

# TABLE OF AUTHORITIES

## Cases

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ............................................................... 24

*Arnold v. Nurs. & Rehab. Ctr. at Good Shepard, LLC*, 471 F.3d 843 (8th Cir. 2006) ............... 32

*Benson v. NW Airlines, Inc.*, 62 F.3d 1108 (8th Cir. 1995) ...................................................... 27

*Canny v. Dr. Pepper/Seven-Up Bottling Grp., Inc.*, 439 F.3d 894  (8th Cir. 2006) ................... 27

*Couty v. Dole*, 886 F.2d 147 (8th Cir. 1989) ........................................................................... 38

*Davenport v. Riverview Garden Sch. Dist.*, 30 F.3d 940 (8th Cir. 1994) ................................. 33

*EEOC v. Convergys Customer Mgmt. Grp. Inc.*, 491 F.3d 790 (8th Cir. 2007) ........... 25, 30, 31

*EEOC v. Kohler Co.*, 335 F.3d 766 (8th Cir. 2003) .................................................................. 34

*Fitzgerald v. Action, Inc.*, 521 F.3d 867 (8th Cir. 2008) ......................................................... 34

*Fjellestad v. Pizza Hut of Am., Inc.*, 188 F.3d 944 (8th Cir. 1999) ..................................... 24, 25

*Heisler v. Metro. Council*, 339 F.3d 622 (8th Cir. 2003) ..................................................... 37, 38

*Hill v. Walker*, 737 F.3d 1209 (8th Cir. 2013) ........................................................................ 38

*Hite v. Vermeer Mfg. Co.*, 446 F.3d 858 (8th Cir. 2006) ......................................................... 38

*Jenkins v. Pfizer, Inc.*, 2008 WL 1901206 (W.D. Mo. 2008) .................................................... 34

*Johnson v. Enron Corp.*, 906 F.2d 1234 (8th Cir. 1990) .......................................................... 24

*Keys v. Lutheran Family & Children's Servs. of Mo.*, 668 F.2d 356 (8th Cir. 1981) ............... 38

*Kim v. Nash Finch*, 123 F.3d 1046 (8th Cir. 1997) ................................................................. 34

*Ledbetter v. Alltel Corp. Svcs., Inc.*, 437 F.3d 717 (8th Cir. 2006) ......................................... 34

*Lipp v. Cargill Meat Sols. Corp.*, 911 F.3d 537 (8th Cir. 2018) .......................................... 31, 32

*McCullough v. Real Foods, Inc.*, 140 F.3d 1123 (8th Cir. 1998) ............................................. 32

*Olson v. I.B.M.*, 2006 WL 503291 (D. Minn. 2006) ................................................................. 35

*Reierson v. Resolution Trust Corp.*, 16 F.3d 889, 891 (8th Cir. 1994) .................................... 24

*Schierhoff v. GlaxoSmithKline Consumer Healthcare, L.P.*, 444 F.3d 961 (8th Cir. 2006) ......... 31, 32

*Schweiss v. Chrysler Motors Corp.*, 987 F.2d 548 (8th Cir. 1993) ........................................... 38

*Shaffer v. Potter*, 499 F.3d 900 (8th Cir. 2007). .................................................................... 32

*Stuart v. GMC*, 217 F.3d 621 (8th Cir. 2000) .................................................................. 33, 36

*Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 315 (3rd Cir. 1999). ...................................... 25

*Taylor v. Principal Fin. Grp., Inc.*, 93 F.3d 155 (5th Cir. 1996) ............................................... 25

*Williams-Raynor v. Ark. Dep't of Health*, 2017 WL 1017636 (E.D. Ark. Mar. 15, 2017) ......... 36, 37

*Young v. Warner-Jenkinson Co., Inc.*, 152 F.3d 1018 (8th Cir. 1998) ...................................... 34

## Statutes

29 C.F.R. § 1630 ............................................................................................................... 25, 27

42 U.S.C.A. § 12112(b)(5)(A) .................................................................................................. 25

Americans with Disabilities Act of 1990, § 102(b)(5)(A) ........................................................ 25

## Rules

Fed. R. Civ. P. 56 ...................................................................................................................... 24

Fed. R. Civ. P. 8 ..................................................................................................................... 7, 8

Plaintiff Shelbie Schweitzer, by and through her undersigned counsel, respectfully submits the following suggestions in opposition to Defendant's Motion for Summary Judgment:

## I.    INTRODUCTION

Plaintiff Shelbie Schweitzer has brought this action against Defendant Preferred Family Healthcare, Inc., alleging Defendant: 1) discriminated against her based on her sex in violation of Title VII as amended by the Pregnancy Discrimination Act, 2) failed to accommodate her under the ADA, 3) discriminated against her due to her disability in violation of the ADA, and 4) retaliated against her in violation of the ADA.

Plaintiff can establish that her termination was motivated by her pregnancy, requests to temporarily work from home, and requests for time off due to her pregnancy-related health condition. This can be established through the close temporal proximity of when: 1) Plaintiff's supervisor, Rebecca Allee, learned of her pregnancy; 2) Plaintiff made accommodation requests for her pregnancy-related health conditions; and 3) Plaintiff was terminated by Ms. Allee supervisor.

## II.    PLAINTIFF'S RESPONSES TO DEFENDANT'S "STATEMENT OF UNCONTROVERTED MATERIAL FACTS"

Plaintiff provides the following responses to Defendant's Statement of Uncontroverted Material Facts ("DSUMF"):

1.    Plaintiff was employed as a foster care case manager for Defendant Preferred Family Healthcare, Inc. ("Preferred") from November 7, 2016 to January 25, 2017. [Exhibit 1, Deposition of Shelbie Schweitzer, at p. 9:16-21, 26:7-27:4, 47:11-14).

**Response: Solely for the purposes of this summary judgment motion, admit.**

2.    At all times relevant to the allegations in the Complaint, Rebecca Allee was Plaintiffs immediate supervisor. [Exhibit 1, Schweitzer Deposition, at p. 10:20-11:3].

3

**Response: Solely for the purposes of this summary judgment motion, admit in part and deny in part. Plaintiff states that when she was hired, her supervisor was Cyndi McDaniel. Def. Ex. 1, Schweitzer Dep. 10:22. Plaintiff goes on to say that at some point in 2016, her supervisor became Rebecca Allee. Def. Ex. 1, Schweitzer Dep. 10:22-11:3.**

3.      Plaintiff was required to report all personnel issues to Rebecca Allee her

immediate supervisor. [Exhibit 2, Corporate Compliance Training Test (BLG025)]; Exhibit

1, Schweitzer Deposition, at p. 92:4-20].

**Response: Solely for the purposes of this summary judgment motion, admit in part and deny in part. Plaintiff admits she was required to report all personnel issues to her immediate supervisor; however, Plaintiff denies Rebecca Allee was her immediate supervisor throughout her entire employment. As previously stated in response to Defendant's Statement of Uncontroverted Facts No. 2, Plaintiff's supervisor was Cyndi McDaniel at the time she was hired. Def. Ex. 1, Schweitzer Dep. 10:22. Rebecca Allee became Plaintiff's supervisor at some point in 2016. Def. Ex. 1, Schweitzer Dep. 10:22-11:3.**

4.      Plaintiff admits she never submitted a request for change. [Exhibit 1,

Schweitzer Deposition, at p. 92:21-93:6).

**Response: Solely for the purposes of this summary judgment motion, admit in part and deny in part. Plaintiff admits that she did not submit a request for change <u>form</u> directly to Rebecca Allee. However, a request for change was submitted by Plaintiff to Human Resources.  Specifically, Plaintiff informed human resources of a serious health condition and requested change in her work schedule including leave. Exhibit 1, FMLA Request. That request was sent by email to Allee who testified she does not believe she would have read it. Exhibit 2, Rebecca Allee Dep. 201:24-205:23.**

5.      Plaintiff's written job description required her to work "in a typical office

setting, the homes of clients and other foster families, community, and within the offices of

community professionals." [Exhibit 3, Job Description (BLG021-24)); [Exhibit 1,

Schweitzer  Deposition, at p. 95:3-22).

**Response: Solely for the purposes of this summary judgment motion, admit in part and deny in part. Plaintiff admits that the working conditions section of the written job description states "The [Foster Care Case Manager] works in a typical**

4

office setting, the homes of clients and foster families, community and within the offices of community professionals." Def. Ex. 3.

However, in one and a half pages and forty-five bullet points, the job description clearly details each of the "Essential Duties and Responsibilities." Def. Ex. 3. Working in a typical office setting, the homes of clients, and other foster families is <u>not</u> listed in the job description as one of the essential duties for a foster care case manager. See Def. Ex. 3. Numerous individuals, including Defendant's corporate representative, testified that Defendant allowed Foster Care Case Managers to work from home. Ex. 2, Allee Dep. 44:4-7, 45:13-15; Def. Ex. 10, ¶22; Exhibit 3, Lindsey Crosswhite Dep. 6:14-19; Exhibit 4, Cyndi McDaniel Dep. 24:15-18, 26:1-4; Exhibit 5, Mary Turner Dep. 53:20-23; Exhibit 6, Defendant's Responses to Plaintiff's Requests for Admissions, ¶11.

6.    Plaintiff admitted her written job description accurately reflects her working conditions and requirements of a foster care case manager. [Exhibit 3, Job Description (BLG021-24)]; [Exhibit 1, Schweitzer Deposition, at p. 95:3-22, 121:18-25).

Response: Solely for the purposes of this summary judgment motion, admit in part and deny in part. Plaintiff only testified that the "working conditions" section stated the "typical environment" and the "summary" section of the job description accurately reflected the job of a foster care case manager. Def. Ex. 1, Schweitzer Dep. 95:3-22, 121:18-25. Plaintiff did not admit or state that the job description accurately reflected the "requirements" of foster care case manager. Def. Ex. 1, Schweitzer Dep. 95:3-22, 121:18-25.

7.    Plaintiff's written job description made her "responsible for the safety of and services to children in foster care and their families," and in order to discharge her duties as a foster care case manager, she had to actually make home visits. [Exhibit 3, Job Description (BLG021-24)]; [Exhibit 1, Schweitzer Deposition, at p. 98:17-99:13].

Response: Solely for the purposes of this summary judgment motion, admit.

8.    Plaintiff testified that home visits happened "quite a bit." [Exhibit 1, Schweitzer Deposition, at p. 99:1-13].

Response: Solely for the purposes of this summary judgment motion, admit.

9.    Plaintiff did home visits in November of 2016. [Exhibit 1, Schweitzer

Deposition, at p. 104:21-23]; [Exhibit 4, Day Planner (BLG0274)].

> **Response: Solely for the purposes of this summary judgment motion, admit in part and deny in part. While Plaintiff does agree that she did home visits in November of 2016, Plaintiff testified that the entries on her day planner "weren't all necessarily [her] visits" and she "did not go to all of these visits on [her] calendar." Def. Ex. 1, Schweitzer Dep. 104:7-23. Plaintiff testified that she "copied the calendar of Lindsey Crosswhite and Courtney Meek to go on some of their visits to see, as part of [her] training." Def. Ex. 1, Schweitzer Dep. 104:7-20.**

10.     Attending Family Support Team meetings ("FST") was part of her job duties as a foster care case manager and the meetings occurred at the office of Preferred Family Healthcare or at an attorney's office. [Exhibit 1, Schweitzer Deposition, at p. 108:2-25, 109:1).

> **Response: Solely for the purposes of this summary judgment motion, admit in part and deny in part. Plaintiff admits that FST's were part of her job duties as a foster care case manager; however, when asked where these meetings typically take place Plaintiff responded, "a lot of times they were in our office or the attorney's office." Def. Ex. 1, Schweitzer Dep. 108:16-19. While Plaintiff was not aware of such meetings occurring elsewhere, Plaintiff was still being trained at the time of her termination. Exhibit 7, Shelbie Schweitzer Dep. 104:7-105:16, 108:20-23.**

11.     Within 72 hours from a child being removed from a biological home, Plaintiff was required to meet the family with the Family Support Team and the meetings typically took place at the offices of Preferred Family Healthcare or one of the legal offices. [Exhibit 1, Schweitzer Deposition, at p. 110:9-25, 111:1-4].

> **Response: Solely for the purposes of this summary judgment motion, admit in part and deny in part. Plaintiff testified, "when a child is removed from their biological home, *we* were required to meet the family with Family Support Team at 72 hours after removal, I believe." Def. Ex. 1, Schweitzer Dep. 110:12-15 (emphasis added). Plaintiff was not Defendant's only Foster Care Case Manager, and therefore was not required to conduct *all* 72-hour meetings for Defendant, and Plaintiff was still going through training at the time of her termination. Ex. 7, Schweitzer Dep. 104:7-105:16; Ex. 2, Allee Dep. 27:16-19.**

12.     A termination of parental rights is a court hearing and something Plaintiff

would be called upon to do as part of her duties as a foster care case manager. [Exhibit 1, Schweitzer Deposition, at p. 117:7-23].

**Response: Solely for the purposes of this summary judgment motion, admit.**

13.     Plaintiff knew that going to court was part of her job at Preferred Family Healthcare. [Exhibit 1, Schweitzer Deposition, at p. 113:6-15].

**Response: Solely for the purposes of this summary judgment motion, admit.**

14.     Plaintiff had a home visit scheduled on January 24, 2017 that she did not attend because she was in the hospital. [Exhibit 1, Schweitzer Deposition, at p. 130:8-17].

**Response: Solely for the purposes of this summary judgment motion, deny. Plaintiff did not have a home visit scheduled for January 24, 2017. On January 24, 2017, a home visit was noted on Plaintiff's calendar for a PFH employee. Def. Ex. 4-5. Plaintiff was in the hospital on January 24, 2017. Def. Ex. 1, Schweitzer Dep. 130:8-10. Plaintiff did not testify that it was a home visit of one of her cases or a home visit that she was scheduled or required to attend, and therefore denies as such. See Def. Ex. 1, Schweitzer Dep. 130:8-17. As previously stated, Plaintiff voluntarily copied the calendars of other Foster Care Case Managers as potential training opportunities to see certain events. Def. Ex. 1, Schweitzer Dep. 104:7-20. Plaintiff was still in training at the time of her termination. Ex. 7, Schweitzer Dep. 105:14-16.**

15.     Plaintiff also had two (2) family support team meetings scheduled on January 25, 2017 that she did not attend. [Exhibit 1, Schweitzer Deposition, at p. 130:18-25].

**Response: Solely for the purposes of this summary judgment motion, deny. Plaintiff denies that she had anything scheduled on her calendar for January 25, 2017. Plaintiff was in the hospital and terminated on January 25, 2017. Def. Ex. 1, Schweitzer Dep. 130:18-25. Plaintiff did not testify that the family support team meetings on her calendar were for any of her cases or meetings that she was scheduled or required to attend, and therefore denies as such. See Def. Ex. 1, Schweitzer Dep. 130:18-25. As previously stated, Plaintiff copied the calendars of other Foster Care Case Managers to see certain events as part of her training. Def. Ex. 1, Schweitzer Dep. 104:7-20. Plaintiff was still in training at the time of her termination. Ex. 7, Schweitzer Dep. 105:14-16.**

16.     In her lawsuit, working from home is the only accommodation she requested

from Preferred Family Healthcare. [Exhibit 1, Schweitzer Deposition, at p. 65:19-66:9];

[Exhibit 10, Complaint 167].

> **Response: Solely for the purposes of this summary judgment motion, deny. One accommodation Plaintiff requested from Preferred Family Healthcare was the accommodation to work from home at certain times during her employment with Defendant. Def. Ex. 10, ¶67. However, Plaintiff denies that working from home was the *only* accommodation requested. As required by the notice pleading requirements of the Federal Rules of Civil Procedure, Plaintiff states in her Complaint that she requested a reasonable accommodation and that Defendant failed to provide her a reasonable accommodation. Def. Ex. 10, ¶¶ 70, 78; Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief must contain… a short and plain statement of the claim showing that the pleader is entitled to relief"). Plaintiff requested time off of work via the doctor's notes Plaintiff and/or her doctor's office provided to Defendant. Def. Ex. 10, ¶¶ 35, 37, 42-45. Plaintiff also requested time off of work via her request for medical leave, wherein Plaintiff notified Defendant that she needed time off due to a serious health condition. Exhibit 1; Ex. 7, Schweitzer Dep. 42:6-9; Exhibit 8, Amy Schwend Dep. 24:19-28:18.**

17.    Plaintiff admits the accommodation she would have required in order to do her job from January 23-27, 2017 was time off, not working from home, and her lawsuit mentions nothing about requesting an accommodation of time off from Preferred Family Healthcare.

[Exhibit 1, Schweitzer Deposition, at p. 181:16--182:12].

> **Response: Solely for the purposes of this summary judgment motion, admit in part and deny in part. Plaintiff admits that she would have needed some time off during her hospital stay from January 23-27, 2017. Def. Ex. 1, Schweitzer Dep. 181:16-25. Plaintiff denies that she did not need the accommodation of working from home, as Plaintiff testified that "working from home would have made it easier to do the job." Def. Ex. 1, Schweitzer Dep. 181:16-25. Plaintiff also denies that her lawsuit does not mention requesting an accommodation of time off. As required by the notice pleading requirements of the Federal Rules of Civil Procedure, Plaintiff states in her Complaint that she requested a reasonable accommodation and that Defendant failed to provide her a reasonable accommodation. Def. Ex. 10, ¶¶ 70, 78; Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief must contain… a short and plain statement of the claim showing that the pleader is entitled to relief"). Plaintiff requested time off of work via the doctor's notes Plaintiff and/or her doctor's office provided to Defendant. Def. Ex. 10, ¶¶ 35, 37, 42-45. Plaintiff also requested time off of work via her request for medical leave, wherein Plaintiff notified Defendant that she needed**

**time off due to a serious health condition. Ex. 1; Ex. 7, Schweitzer Dep. 42:6-9; Ex. 8, Schwend Dep. 24:19-28:18.**

18.    After Plaintiff's employment with Preferred ended, she did not work again until February of 2018, over a year after she was terminated from employment with Preferred. [Exhibit 1, Schweitzer Deposition, at p. 145:8-18].

**Response: Solely for the purposes of this summary judgment motion, admit.**

19.    Plaintiff was hospitalized at least four (4) times during and after the time she was terminated from employment on January 25, 2017, during which she admits she was unavailable to work, and the dates of those hospitalizations were: January 23-27, 2017, February 1-6, 2017, February 9-19, 2017, and October 17-25, 2017. [Exhibit 1, Schweitzer Deposition, at p. 145:19-146:9, 167:5-17, 169:3-8, 177:1-5, 180:16-181:7].

**Response: Solely for the purposes of this summary judgment motion, admit in part and deny in part. Plaintiff admits that she was in the hospital and speculated she might have been unavailable to work on certain dates <u>after</u> her termination. However, Plaintiff testified that she believes the hospitalizations after her termination were attributed to her termination from Preferred Family Healthcare and the depression associated with that. Def. Ex. 1, Schweitzer Dep. 177:12-18.**

**Furthermore, the hospitalization dates given to Plaintiff, from defense counsel, in her deposition were misstated and included weekends that Plaintiff would not have worked. Exhibit 9, Schweitzer Affidavit. Plaintiff mistakenly assumed the dates cited by defense counsel were from the medical records and accurate. Ex. 9. The accurate weekday hospitalization dates would have been Jan 26-27, Feb 1-3, 6, 9-10, 14-17, Oct 16-18th. Ex. 9. If Plaintiff was not terminated her position is that she would not have had these additional pregnancy-related missed workdays. Def. Ex. 1, Schweitzer Dep. 177:12-18; Ex. 9.**

20.    Plaintiff's current job involves work she can do from home and allows her to work "when [she has] the time to do so." [Exhibit 1, Schweitzer Deposition, at p. 146:22- 147:24].

**Response: Solely for the purposes of this summary judgment motion, admit.**

9

21. Since the time her employment with Preferred ended, Plaintiff has only worked at jobs done at home in which she did not have to pay for childcare. [Exhibit 1, Schweitzer Deposition, at p. 147:16-148:10].

**Response: Solely for the purposes of this summary judgment motion, admit.**

22. After her employment with Preferred ended, Plaintiff turned down a job offer that required her to work some away from home. [Exhibit 1, Schweitzer Deposition, at p. 148:11- 20].

**Response: Solely for the purposes of this summary judgment motion, admit. As Plaintiff stated in response to Defendant's Interrogatory No. 4, Plaintiff turned down the job offer at The Nebraska Club due to having already accepted employment with Raterlabs. Exhibit 10, Plaintiff's Response to Defendant's Interrogatories, No. 4.**

23. Plaintiff has not even *applied* for a job that would have required her to work some away from home since January 16, 2018. [Exhibit 1, Schweitzer Deposition, at p. 150:22- 151:2].

**Response: Solely for the purposes of this summary judgment motion, admit. Plaintiff had already retained employment by that time working remotely. Def. Ex. 1, Schweitzer Dep. 146:22-147:15; Ex. 10.**

24. Preferred's contract with the State of Missouri required nineteen duties of foster care case managers fourteen of which must be performed away from home:

1. Assess the risk of child abuse/neglect and on-going safety of children;
2. Assess child and family functioning, protective factors, family strengths, family needs, stressors, and coping mechanisms;
3. Help parents improve the parents' ability to care for the parents'child;
4. Help children and families plan for and adjust to transitions;
5. Evaluate the continued need for placement;
6. Evaluate the impact of services provided for the child and family;
7. Address parenting skills;
8. Understand family systems;
9. Utilize communication and conflict resolution skills;
10. Intervene on behalf of abused and neglected children and their

      families;

11. Testify in court as may be required in cases managed by the contractor;

12. Recruit and evaluate resource homes ability as caregivers to develop a collaborative relationship with foster parents;

13. Assist foster parents and kinship caregivers to provide a safe, nurturing environment; and

14. Work with community members and collaborate with other disciplines in service delivery to the child and family.

[Exhibit 11, Preferred Healthcare Contract with State of Missouri, PFH5083-84].

> **Response: Solely for the purposes of this summary judgment motion, deny. This "evidence" presented by Defendant PFH should not be considered by the Court, as the proposal between PFH and the State of Missouri was effective prior to Plaintiff's employment with Defendant – therefore such *proposed* contract terms do not have any bearing on Plaintiff's employment. Def. Ex. 11, PFH 5073. If effective during Plaintiff's employment, Defendant should have produced such contract. Further, there is nothing in the record and <u>no</u> indication in the proposal that any of the <u>eighteen</u> listed tasks "must be performed away from home" as alleged by Defendant. Def. Ex. 11, PFH 5083-84.**

    25.     Plaintiff was given an attendance policy during her onboarding process and

that applied to her employment that stated:

Reliability and promptness are expected. In those rare instances when an employee cannot avoid being late or is unable to work as scheduled, the employee must report such to their supervisor as soon as possible in advance of the anticipated tardiness or absence. Notification by the employee to his/her immediate supervisor is required prior to the date of absence and no later than their scheduled start time <u>beginning</u> the day of absence, except where extenuating circumstances exist. If an employee is absent from work and does not notify their supervisor within 24 hours of their scheduled start time, the organization may consider this absence as voluntary resignation from employment and the individual's employment may not continue.

[Exhibit 1, Schweitzer Deposition, at p.134:4-25]; [Exhibit 6, BLG 37].

> **Response: Solely for the purposes of this summary judgment motion, admit in part and deny in part. Plaintiff admits the above information is an excerpt of Defendant's attendance policy. Plaintiff denies that the above information is the entire attendance policy. Def. Ex. 6. The policy also states other information regarding attendance, illness, and hospitalization, including:**
>> **Any employee missing three (3) consecutive work periods due to illness or injury will be required to provide a written doctors release before returning to work. Without a written release, the employee will not be allowed to**

11

return to work.
**Should an employee need to be hospitalized, the employee should inform his/her supervisor, or if unavailable another member of management, as to the length of estimated stay in the hospital and/or period of required recuperation from the illness. (A verbal statement will be permitted as long as the written physician statement is provided upon return to work).**
**Def. Ex. 6.**

26.     Plaintiff was a no call no show to work from January 17 to January 20,

2017. [Exhibit 9, R. Allee Deposition, Vol. 2, p. 153:4-25, 154:1-20].

**Response: Solely for the purposes of this summary judgment motion, deny. Plaintiff was working at least part of the day on January 17, 2020. Ex. 2, Allee Dep. 251:17-253:2; Exhibit 11, Plaintiff Working January 17, 2017. In addition, on January 17, 2017, Plaintiff's doctor issued a third doctor's note advising that Plaintiff remain off work from January 17 through January 20, 2017, which Plaintiff provided to Defendant. Exhibit 12, Plaintiff's Doctor's Notes; Ex. 7, Schweitzer Dep. 81:3-8. Plaintiff continued to work from home and for Defendant when possible, including performing home visits up until January 19, 2017. Ex. 7, Schweitzer Dep. 137:16-138:11.**

27.     Plaintiff was not disciplined for her no call no shows prior to January 23

because they were trying to work with her. [Exhibit 9, R. Allee Deposition, Vol. 2, p. 155:13-19].

**Response: Solely for the purposes of this summary judgment motion, admit in part and deny in part. Plaintiff admits she was not disciplined during her employment with Defendant up until her termination. Ex. 2, Allee Dep. 39:16-18; Ex. 5, Turner Dep. 51:10-18, 61:14-18. Plaintiff denies allegations of "no call no shows" during her employment with Defendant – as Plaintiff had provided Defendant with doctor's notes to remain off work from January 1 through January 20, 2017 but was working from home when she could and was performing her job duties and regularly attending meetings in the office and with her assigned families. Ex. 7, Schweitzer Dep. 53:22-54:5, 57:4-24; Ex. 12. Because Plaintiff had provided Defendants with doctor's notes, Defendant had released Plaintiff from work for those days, therefore no discipline was warranted. Ex. 2, Allee Dep. 123:1-6; Ex. 5, Turner Dep. 55:19-56:6.**

28.     Rebecca Allee did not see a doctor's note for Plaintiffs absences from January

17, 2017 through January 20, 2017. [Exhibit 7, Proffered Statement (BLG052)]; [Exhibit 9,

R. Allee Deposition, Vol. 2, p. 200:13-25, 201:1-8, 205:24-25, 206:1-10].

**Response: Solely for the purposes of this summary judgment motion, deny.**

12

**Plaintiff testified that she herself gave the January 17, 2017 doctor's note to Ms. Allee. Ex. 7, Schweitzer Dep. 81:3-8.**

29.    Plaintiff was hospitalized at Cox South from January 23, 2017 through and including January 27, 2017 (the "January Hospitalization') [Exhibit 1, Schweitzer Deposition, at p. 13:3-6].

**Response: Solely for the purposes of this summary judgment motion, admit.**

30.    During the January Hospitalization, Plaintiff only spoke with one person at Preferred - Rebecca Allee. [Exhibit 1, Schweitzer Deposition, at p. 14:1-15:5].

**Response: Solely for the purposes of this summary judgment motion, admit. For clarification, Plaintiff was only a PFH employee January 23rd and 24th, she was terminated on January 25th before completing the remainder of her hospitalization. Plaintiff testified that she doesn't believe she spoke to anyone working for Defendant PFH other than Ms. Allee. Def. Ex. 1, Schweitzer Dep. 14:1-24.**

31.    During the January Hospitalization, Plaintiff only had two (2) phone calls with Rebecca Allee, on the first phone call, Plaintiff told Ms. Allee she was hospitalized, and during the second phone call, Ms. Allee terminated Plaintiff's position with Preferred. [Exhibit 1, Schweitzer Deposition, at p. 17:6-18:14].

**Response: Solely for the purposes of this summary judgment motion, deny. Plaintiff admits that during the two and a half days while she was in the hospital for a medical emergency and still a PFH employee, she can recall at least two phone conversations that occurred between Plaintiff and Ms. Allee; however, Plaintiff denies that only the hospitalization and termination were discussed during the conversations. During the January 23, 2017 conversation, Plaintiff notified Defendant, via Ms. Allee, that she was in the hospital and Ms. Allee then asked if Plaintiff was pregnant. Ex. 7, Schweitzer Dep. 17:10-20. Plaintiff told Ms. Allee that she was and Ms. Allee responded saying, "you didn't tell us that." Ex. 7, Schweitzer Dep. 17:10-20. In the second conversation, occurring January 25, 2017, Ms. Allee told Plaintiff that Defendant could no longer hold her position but that if Plaintiff provided another doctor's note regarding the January Hospitalization, Plaintiff would be eligible for rehire after she delivered her baby. Ex. 7, Schweitzer Dep. 18:6-19:16.**

13

32.     Plaintiffs mobile phone records show the first conversation between Plaintiff and Rebecca Allee occurred on January 23 at 2:59 p.m. and the second on January 25, 2017 at 12:35 p.m. [Exhibit 1, Schweitzer Deposition, at p. 22:13-25, 23:1-25, 24:1-25, 25:1-25, 26:1-19]; [Exhibit 12 (Verizon Phone Records) BLG091].

> **Response: Solely for the purposes of this summary judgment motion, admit. The records show the two conversations Plaintiff and Ms. Allee had during Plaintiff's January Hospitalization.**

33.     Plaintiff admits she was terminated during the second call with Rebecca Allee on January 25, 2017. [Exhibit 1, Schweitzer Deposition, at p. 26:7-27:4].

> **Response: Solely for the purposes of this summary judgment motion, admit.**

34.     Plaintiff did not communicate with Rebecca Allee on January 24, 2017. [Exhibit1, Schweitzer Deposition, at p. 28:11-20, 29:20-23].

> **Response: Solely for the purposes of this summary judgment motion, admit. Plaintiff testified that she believes she did not have a conversation with Ms. Allee on January 24, 2017. Ex. 7, Schweitzer Dep. 28:17-29:23.**

35.     Plaintiff was terminated by Rebecca Allee on January 25, 2017 due to her no call no show on January 24 and 25. [Exhibit 8, R. Allee Deposition, Vol. 1, p. 71:19-25, 72:1-12]; [Exhibit 9, R. Allee Deposition, Vol. 2, p. 205:24-25, 206:1-9]; [Exhibit 7, Proffered Statement (BLG052)].

> **Response: Solely for the purposes of this summary judgment motion, deny. Plaintiff was terminated by Ms. Allee on January 25, 2017. Ex. 2, Allee Dep. 71:19-21, 172:9-18. Plaintiff denies that she was terminated due to no call no shows on January 24 and 25, 2017 – as Ms. Allee told Plaintiff she was terminated because Defendant could no longer hold her position due to her pregnancy-related absences. Ex. 7, Schweitzer Dep. 18:10-14. Allee further indicated that if Plaintiff provided another doctor's note regarding the January Hospitalization, Plaintiff would be eligible for rehire after she delivered her baby. Ex. 7, Schweitzer Dep. 18:6-19:16. Further, and in accordance with Defendant's attendance policy, Plaintiff provided verbal notice of her hospitalization to her employer. See Def. Ex. 6.**

14

36.     Plaintiff admits no one from Preferred gave Plaintiff a different reason for termination, and Rebecca Allee is the only one who told Plaintiff why she was being terminated. [Exhibit 1, Schweitzer Deposition, at p. 31:6-17].

> **Response: Solely for the purposes of this summary judgment motion, admit in part and deny in part. Defendant statement is incomplete and it is not clear as to what it is referring to when saying no one from Preferred gave Plaintiff a "different reason." A different reason from what? Plaintiff testified that she does not remember anyone else giving her a different reason other than telling her that PFH could no longer hold her position due to her pregnancy-related absences and that she would be eligible for rehire after deliver of her baby. Ex. 7, Schweitzer Dep. 18:10-14. Plaintiff believed the only person from PFH that told her why she was being terminated was Ms. Allee. Def. Ex. 1, Schweitzer Dep. 31:6-17.**

37.     After January 9, 2017, Rebecca Allee told Plaintiff that in order for her to work from home, she would need a doctor's note. [Exhibit 1, Schweitzer Deposition, at p. 69:11-25, 70:1-6].

> **Response: Solely for the purposes of this summary judgment motion, deny. Plaintiff testified that on January 9th (not after), Ms. Allee encouraged her to work from home and *asked* for a doctor's note which Plaintiff provided. Def. Ex. 1, Schweitzer Dep. 69:22-70:6.**

38.     Plaintiff claims she (or someone on her behalf) provided three work releases to Preferred during her employment with Preferred -those releases were for the dates of January 9, 2017, January 16, 2017, and January 17, 2017. [Exhibit 1, Schweitzer Deposition, at p. 84:10- 18].

> **Response: Solely for the purposes of this summary judgment motion, admit in part and deny in part. Plaintiff admits that she, or someone on her behalf, provided three work releases to PFH during her employment with PFH. Ex. 2, Allee Dep. 122:14-25, 167:17-23, 183:21-24, 189:3-190:6; Ex. 7, Schweitzer Dep. 67:4-24, 81:3-8; Ex. 12. Plaintiff denies that such releases were for the dates of January 9, 16, and 17. Plaintiff's doctor's notes were *dated* January 9, 16, and 17, but excused Plaintiff from work for the workdays of January 1 through 20, 2017. Ex. 12; Ex. 2, Allee Dep. 123:1-6; Ex. 5, Turner Dep. 55:19-56:6.**

15

39.     Plaintiff did not provide Preferred with a work release for the January

Hospitalization. [Exhibit 1, Schweitzer Deposition, at p. 84:21-85:7].

> **Response: Solely for the purposes of this summary judgment motion, admit.
> Plaintiff testified that she had a medical emergency, was admitted to the hospital,
> and "was not given that opportunity to [provide a work release] before [she] was
> terminated." Def. Ex. 1, Schweitzer Dep. 84:21-85:7.**

40.     Plaintiff admits she gave no verbal notice of absence on January 24, 2017

to Preferred Family Healthcare. [Exhibit 1, Schweitzer Deposition, at p. 87:20-24, 88:22-

89:2].

> **Response: Solely for the purposes of this summary judgment motion, deny.
> Plaintiff provided verbal notice that she was in the hospital beginning January 23,
> 2017 and was believed to have extended to January 24, 2017. Ex. 7, Schweitzer
> Dep. 86:23-89:5. Further, Defendant testified that the attendance policy does not
> specifically say the employee must call on a day-to-day basis when hospitalized.
> Exhibit 13, Stacey Hudson Dep. 92:22-93:3.**

41.     Plaintiff admits she did not ask anyone to send Preferred  a work release during

her hospitalizations from January 23 up until she was terminated  on January 25, 2017.

[Exhibit 1, Schweitzer Deposition, at p. 90:21-91:11).

> **Response: Solely for the purposes of this summary judgment motion, admit. In
> accordance with PFH's attendance policy, Plaintiff provided verbal notice of her
> hospitalization beginning January 23, 2017. Ex. 7, Schweitzer Dep. 87:8-89:5.
> Plaintiff testified that she "was not given [the] opportunity [to provide a work
> release] before [she] was terminated." Def. Ex. 1, Schweitzer Dep. 84:21-85:7.**

42.     The start of Plaintiffs shift on January 24 was 8:00 a.m. [Exhibit 8, R. Allee

Deposition, Vol. 1, p. 111:7-9].

> **Response: Solely for the purposes of this summary judgment motion, admit in
> part and deny in part. Plaintiff admits that the start of her shift on January 24,
> 2017 would have been at 8 a.m. but for her verbal notice to Ms. Allee of her
> hospitalization beginning January 23, 2017. Ex. 7, Schweitzer Dep. 87:8-89:5.**

43.     Outside of Shelbie Schweitzer, Rebecca Allee does not remember an employee

16

fail to notify her prior to the day of absence and no later than their scheduled start time that the

employee would miss work. [Exhibit 8, R. Allee Deposition, Vol. 1, p. 108:18-25, 109:1-

19).

> **Response: Solely for the purposes of this summary judgment motion, admit. Allee alleged that she does not remember any employee failing to notify her prior to the day of absence and no later than their scheduled start time that the employee would miss work. Def. Ex. 8, Allee Dep. 108:18-109:19.**

44.     Prior to January 9, 2017, Rebecca Allee encouraged Plaintiff to work from

home as much as possible and after January 9, although Rebecca encouraged Plaintiff to work

from home, she asked for a doctor's note. [Exhibit 1, Schweitzer Deposition, at p. 69:11-25,

70:1-6).

> **Response: Solely for the purposes of this summary judgment motion, admit in part and deny in part. Plaintiff denies that Allee asked for a doctor's note prior to January 9, 2017. Def. Ex. 1, Schweitzer Dep. 69:11-70:5. Starting on January 9, 2017 Allee asked for a doctor's note. Def. Ex. 1, Schweitzer Dep. 69:11-70:5.**

45.     Plaintiff filed her Charge of Discrimination with the Missouri Commission on

Human Rights on November 17, 2017. [Exhibit 10, Exhibit A ("Charge")].

> **Response: Solely for the purposes of this summary judgment motion, admit in part and deny in part. Plaintiff filed her Charge of Discrimination on November 17, 2017 with the Equal Employment Opportunity Commission. Def. Ex. 10, Ex. A. Plaintiff's Charge was dual filed with the Missouri Commission on Human Rights. Def. Ex. 10, Ex. A.**

46.     The Charge mentions nothing about retaliation and the retaliation box is not

checked. [Exhibit 10, Exhibit A ("Charge")].

> **Response: Solely for the purposes of this summary judgment motion, admit in part and deny in part. Plaintiff admits that the Charge does not state the word "retaliation" and does not have the retaliation box checked. Plaintiff denies that the Charge "mentions nothing about retaliation", as the Charge can be understood to be describing retaliation, including Plaintiff replying to Defendant that she was pregnant, Plaintiff's termination within two days later, and Defendant stating Plaintiff would be eligible for rehire after having her baby. See**

17

**Def. Ex. 10.**

47.    In 2017 at Preferred, an employee had to be employed 90 days before they

could begin to utilize paid time off.  [Exhibit 13, Hudson Deposition,  Vol. 2, p. 239:1-11].

> **Response: Solely for the purposes of this summary judgment motion, deny.
> Defendant's PTO policy in place at the time of Plaintiff's employment allowed a
> supervisor to approve PTO time within the employee's first 90 days of
> employment. Ex. 13, Hudson Dep. 247:10-15.**

## III.    PLAINTIFF'S STATEMENT OF ADDITIONAL UNCONTROVERTED MATERIAL FACTS

Plaintiff provides the following Statement of Additional Uncontroverted Material Facts

("PSAUMF"):

1.    At the outset of her employment, Plaintiff received a job description for the Foster

Care Case Management position she was hired for which included a list of "essential job duties

and responsibilities." Def. Ex. 3.

2.    Plaintiff had a Bachelor's degree and at least one year of prior experience in

providing community-based or case management services. Ex. 7, Schweitzer Dep. 158:9-10;

Exhibit 14, Plaintiff's Resume; Exhibit 15, Plaintiff's Bachelor's Degree.

3.    Plaintiff had a valid driver's license, auto insurance, and was First Aid and CPR

certified. Exhibit 16, Plaintiff's License, Insurance, and Certification Information.

4.    According to Defendant, Mary Turner (Defendant's Program Manager), and

Plaintiff, Plaintiff was qualified for the position of Foster Care Case Manager. Ex. 7, Schweitzer

Dep. 94:22-24; Def. Ex. 3.

5.    Defendant allowed Foster Care Case Managers to work from home. Ex. 2, Allee

Dep. 44:4-7, 45:13-15; Def. Ex. 10, ¶22; Exhibit 3, Crosswhite Dep. 6:14-19; Ex. 4, McDaniel

Dep. 24:15-18, 26:1-4; Ex. 5, Turner Dep. 53:20-23; Ex. 6, ¶11.

18

6.   Foster Care Case Managers were capable of doing the same tasks at home that could be done in the office. Ex. 3, Crosswhite Dep. 12:3-7; Ex. 4, McDaniel Dep. 24:19-22.

7.   Although some of the Foster Care Case Manager job duties could not be done at home, such as court hearings and 72-hour meetings, such events "didn't happen very often." Ex. 7, Schweitzer Dep. 181:16-182:1, 195:7-23.

8.   Plaintiff's training included attending home visits, meetings, and hearings of other Foster Care Case Managers to observe and learn, therefore the entries on her day planner "weren't all necessarily [her] visits" and she "did not go to all of these visits on [her] calendar." Def. Ex. 1, Schweitzer Dep. 104:7-23; Def. Ex. 4-5. Plaintiff testified that she "copied the calendar of Lindsey Crosswhite and Courtney Meek to voluntarily go on some of their visits to see, as part of [her] training." Def. Ex. 1, Schweitzer Dep. 104:7-20; Def. Ex. 4-5.

9.   On December 30, 2016, Plaintiff visited the emergency room and was diagnosed with a pregnancy-related medical condition called hyperemesis gravidarum. Exhibit 17, Plaintiff's December 30, 2016 ER Visit.

10. Due to her pregnancy-related medical condition and recent ER visit, Plaintiff requested and was granted the ability to work from home in early January 2017. Def. Ex. 10, ¶¶ 29-31, 67; Ex. 2, Allee Dep. 164:16-20, 214:21-215:1.

11. Plaintiff periodically needed the accommodation of working from home due to her medical symptoms including severe nausea, vomiting, inability to drive, and inability to eat. Ex. 7, Schweitzer Dep. 124:13-20, 193:22-194:6.

12. Even with the accommodation of working from home at times Plaintiff could and did still work away from her home, in the office, in client's homes, and at Family Support Team

meetings when not experiencing severe medical symptoms. Def. Ex. 10, ¶¶44-45; Ex. 7, Schweitzer Dep. 81:3-8, 181:16-182:1.

13. Defendant, via supervisor Ms. Allee, gave Plaintiff the accommodation to work from home for some time in January 2017. Def. Ex. 10, ¶¶ 29-31; Ex. 2, Allee Dep. 164:16-20; Ex. 13, Hudson Dep. 257:12-14; Ex. 7, Schweitzer Dep. 69:11-70:5; Ex. 6, ¶33.

14. Ms. Allee testified that a Foster Care Case Manager can work from home for 3 days a month and still perform the essential functions of their job. Ex. 2, Allee Dep. 45:16-48:21.

15. Ms. Allee also testified that a Foster Care Case Manager working from home more than 3 days in a month may have been reasonable based upon the situation and their caseload. Ex. 2, Allee Dep. 45:16-48:21.

16. On January 5, 2017, Plaintiff attended a meeting with Ms. Allee at Defendant's office to discuss Plaintiff's performance, assigned cases, working from home, and some of Plaintiff's symptoms of her pregnancy-related medical condition including severe nausea, vomiting, and Plaintiff's recent ER visit. Def. Ex. 10, ¶33; Ex. 7, Schweitzer Dep. 124:13-20, 194:2-6.

17. On or about January 9, 2017, Plaintiff presented a doctor's note to Defendant advising Plaintiff to remain off of work from January 1 through January 14, 2017 due to her pregnancy-related medical condition and need to work from home. Ex. 12; Ex. 2, Allee Dep. 122:14-25, 167:17-23, 183:21-24; Def. Ex. 10, ¶¶ 35, 37; Ex. 7, Schweitzer Dep. 67:4-24.

18. On January 13, 2017, Plaintiff made a request to Defendant for time off due to a serious health condition. Ex. 1; Ex. 7, Schweitzer Dep. 42:6-9; Ex. 8, Schwend Dep. 28:4-18.

19. On January 16, 2017, Plaintiff signed up for Defendant's health insurance and disability benefits, which were set to begin on or about February 1, 2017. Def. Ex. 10, ¶¶ 56-57;

20

Exhibit 18, Email Notice of Plaintiff's Benefit Request; Ex. 13, Hudson Dep. 234:13-22; Exhibit

19, Defendant's Benefit Guide Excerpt, p 4.

20. On January 16, 2017, Defendants denied Plaintiff's request for time off due to a

serious health condition pursuant to their FMLA policy. Ex. 1; Exhibit 20, Email Re: Plaintiff's

FMLA Eligibility; Ex. 7, Schweitzer Dep. 42:10-15; Ex. 13, Hudson Dep. 99:2-4.

21. Following Defendant's denial of Plaintiff's request for time off due to a serious

health condition on January 16, 2017, Defendant failed to start the interactive process to seek a

reasonable accommodation for Plaintiff. Ex. 2, Allee Dep. 201:24-205:23.

22. Plaintiff's supervisor was not aware of the meaning of reasonable accommodation

under the Defendant's reasonable accommodation policy. Ex. 2, Allee Dep. 41:9-43:3.

23. During Plaintiff's employment, Defendant did not ask Plaintiff if there was a

reasonable accommodation Defendant could provide her or how Defendant could accommodate

her. Ex. 2, Allee Dep. 147:5-8, 224:21-225:6; Ex. 7, Schweitzer Dep. 193:6-9.

24. Defendant did not believe it had a duty to discuss the possibility of a reasonable

accommodation for Plaintiff after being notified Plaintiff was in the hospital or having medical

issues. Ex. 2, Allee Dep. 94:22-95:6.

25. On or about January 16, 2017, Plaintiff presented a doctor's note to Defendant for

her absence that day due to her pregnancy-related health condition, as requested by Defendant.

Ex. 2, Allee Dep. 189:3-190:6; Ex. 12; Def. Ex. 10, ¶42.

26. On January 17, 2017, Plaintiff's doctors issued a third doctor's note advising that

Plaintiff remain off work from January 17 through January 20, 2017, which Plaintiff provided to

Defendant. Def. Ex. 10, ¶¶ 44-45; Exhibit 12; Ex. 7, Schweitzer Dep. 81:3-8.

27. Plaintiff continued working from home and for Defendant, including performing home visits up until January 19, 2017. Def. Ex. 10, ¶¶44-45; Ex. 7, Schweitzer Dep. 81:3-8.

28. Defendant's handbook states, "notification by the employee to his or her immediate supervisor is required prior to the day of absence and no later than their scheduled start time beginning the day of absence, except where extenuating circumstances exist." Def. Ex. 6.

29. Defendant testified that the policy "doesn't specifically say [the employee must call] on a day-to-day basis." Ex. 13, Hudson Dep. 92:22-93:3.

30. Defendant believes extenuating circumstances to be the "inability to talk or make contact or communicate" or "unable to call in." Ex. 2, Allee Dep. 107:21-108:17; Ex. 13, Hudson Dep. 89:4-9.

31. Defendant's handbook further states, "should an employee need to be hospitalized, the employee should inform his/her supervisor, or if unavailable another member of management, as to the length of estimated stay in the hospital and/or period of required recuperation from illness. (A verbal statement will be permitted as long as the written physician statement is provided upon return to work)." Def. Ex. 6.

32. Defendant's PTO policy, in place at the time of Plaintiff's employment, allowed a supervisor to approve PTO time within the employee's first 90 days of employment. Ex. 13, Hudson Dep. 247:10-15.

33. Defendant's policy states that it "will provide reasonable accommodations given for a work-related injury in order for the employee to return to work." Exhibit 21, Handbook Excerpt. p. 27-32.

34. Defendant's policy also states, "retaliation against a person reporting a suspected violation or making a request for reasonable accommodation is prohibited and the retaliator will be subject to disciplinary action." Ex. 21, p. 17.

35. On January 23, 2017, Plaintiff notified Defendant, via Ms. Allee, that she was in the hospital and Ms. Allee then asked Plaintiff if she was pregnant. Def. Ex. 10, ¶¶ 48-51; Ex. 7, Schweitzer Dep. 17:10-20.

36. Plaintiff told Ms. Allee that she was pregnant and Ms. Allee responded saying, "you didn't tell us that." Def. Ex. 10, ¶¶ 48-51; Ex. 7, Schweitzer Dep. 17:10-20.

37. During Plaintiff's time in the hospital and on the way to the hospital, her supervisor never brought to Plaintiff's attention that she could apply for a reasonable accommodation. Ex. 2, Allee Dep. 92:24-94:10.

38. During the January 23rd conversation, Ms. Allee responded to Plaintiff that she would need documentation from Plaintiff's doctor. Ex. 2, Allee Dep. 238:24-239:2.

39. When Plaintiff's supervisor Ms. Allee was informed of Plaintiff's pregnancy and health issues resulting in her need to go to the hospital, Ms. Allee did not offer to see if she could find any sort of accommodation for Plaintiff at Preferred Family Healthcare. Ex. 2, Allee Dep. 239:9-19.

40. No one from PFH ever asked Plaintiff how they could accommodate her. Ex. 7, Schweitzer Dep. 193:6-9.

41. No one from PFH ever asked Plaintiff how long she thought she would be in the hospital. Ex. 7, Schweitzer Dep. 193:10-16.

42. No one from PFH ever asked Plaintiff to provide medical information indicating how long her hospital stay would be when she was admitted in the hospital. Ex. 7, Schweitzer Dep. 193:10-16.

43. When other Foster Care Case Managers had been hospitalized, Defendants employees would distribute the cases and workload. Ex. 4, McDaniels Dep. 42:15-43:7.

44. On January 24-25th, 2017, Plaintiff was still in the hospital due to her pregnancy-related medical condition. Ex. 7, Schweitzer Dep. 13:3-6, 88:4-6.

45. On January 25, 2017, Ms. Allee called Plaintiff to inform her that she was terminated. Def. Ex. 10, ¶¶ 52-53; Ex. 2, Allee Dep. 71:19-21, 172:9-18; Ex. 6, ¶47.

46. During the January 25th conversation, Ms. Allee told Plaintiff that Defendant could not hold her position, but that if Plaintiff turned in a doctor's note for her hospitalization, Plaintiff would be eligible for rehire once she delivered the baby. Def. Ex. 10, ¶¶ 52-53; Ex. 7, Schweitzer Dep. 18:10-14.

47. Plaintiff was still in training at the time of her termination. Ex. 7, Schweitzer Dep. 105:14-16.

## IV.  STANDARD OF REVIEW

Summary judgement is only appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A genuine issue of fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "In determining whether the moving party has met its burden, all evidence and inferences are to be viewed in the light most favorable to the non-moving party." *Reierson v. Resolution Trust Corp.*, 16 F.3d 889, 891 (8th Cir. 1994).

As the Supreme Court stated, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Anderson*, 477 U.S. at 255. "The judge must determine whether there is a genuine issue for trial." *Johnson v. Enron Corp.*, 906 F.2d 1234, 1237 (8th Cir. 1990). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

### V.     ARGUMENT

#### A.  Plaintiff Requested A Reasonable Accommodation In Compliance With The ADA And Defendant Failed To Properly Address Plaintiff's Need For Accommodation Throughout Her Employment

Defendant incorrectly argues that Plaintiff only requested to work from home and "never requested time off…. [or] any accommodation using company policy"; however, Defendant's own documents prove otherwise. Not only did Plaintiff request to work from home, but Plaintiff also requested time off and followed company policy to do so.

An employee is not required to request accommodation in writing, or to use the magic words of "reasonable accommodation," to trigger the employer's responsibility to engage in the interactive process to determine reasonable accommodations under ADA; employee's notice must merely make it clear to the employer that the employee wants assistance for his/her disability. *Fjellestad v. Pizza Hut of Am., Inc.,* 188 F.3d 944 (8th Cir. 1999).

 "What matters under the ADA are not formalisms about the manner of the request, but whether the employee or a representative for the employee provides the employer with enough information that, under the circumstances, the employer can be fairly said to know of both the disability and desire for an accommodation." *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 315 (3rd Cir. 1999); see *EEOC v. Convergys Customer Mgmt. Grp. Inc.*, 491 F.3d 790, 795 (8th

Cir. 2007). "Once the employer knows of the disability and the employee's desire for accommodations, it makes sense to place the burden on the employer to request additional information that the employer believes it needs." *Id.*

The "employee's initial request for an accommodation ... triggers the employer's obligation to participate in the interactive process." *Taylor v. Principal Fin. Grp., Inc.*, 93 F.3d 155, 165 (5th Cir. 1996). Failure to engage in the interactive process to determine whether reasonable accommodations are possible is prima facie evidence, for purposes of summary judgement, that the employer may be acting in bad faith. Americans with Disabilities Act of 1990, § 102(b)(5)(A), 42 U.S.C.A. § 12112(b)(5)(A); Fed. R. Civ. Pro. 56(c); 28 U.S.C.A.; 29 C.F.R. §§ 1630.2(*o*)(3), 1630.9; 29 C.F.R. § 1630; *Fjellestad v. Pizza Hut of Am., Inc.*, 188 F.3d 944 (8th Cir. 1999).

An employer who has received notice that a reasonable accommodation is requested cannot escape its duty under the ADA to engage in the interactive process simply because the employee did not come forward with a reasonable accommodation that would prevail in litigation. *Fjellestad*, 188 F.3d at 944.

Here, Plaintiff requested an accommodation. First, the Parties agree that Plaintiff made a verbal request to work from home. (DSUMF ¶16; PSAUMF ¶10). While Defendant would like the Court to believe that this was the only accommodation Plaintiff requested, Defendant's own documents prove otherwise. Plaintiff also sought time off by way of providing doctor's notes clearly stating she needed to remain off work on certain days. (DSUMF ¶38; PSAUMF ¶17, 25-26; Ex. 12). After informing her supervisor of an ER visit, her ongoing symptoms, and doctor's notes, Plaintiff then submitted paperwork to Defendant requesting time off for a serious health condition. (PSAUMF ¶18; Ex. 1). Finally, both Parties agree that Plaintiff notified Defendant

that she was admitted to the hospital, which clearly illustrated Plaintiff's need for time off. (DSUMF ¶¶29-31; PSAUMF ¶35). Plaintiff clearly requested and gave Defendant numerous opportunities to accommodate her.

While Defendant testified that Plaintiff was given an accommodation to work from home for some time in January 2017, such an accommodation was short lived and taken away nearly as fast as it was initially provided once Plaintiff's supervisor learned that she was pregnant. (DSUMF ¶¶37, 44; PSAUMF ¶¶35-46).

This alone, is evidence that Plaintiff asked for, or at the very least clearly needed an accommodation. However, as stated above, Plaintiff went even further by seeking a number of accommodations in multiple different ways. It is undisputed that Defendant was aware of Plaintiff's need for time off – whether by Plaintiff's words or the documents Plaintiff and Defendant exchanged during her employment.

Each request discussed above constitutes a request for accommodation but taken together there should be no disputing that Plaintiff sought reasonable accommodations during her employment with Defendant, therefore Defendant's Motion for Summary Judgment must be denied.

### B. There Are Genuine Issues Of Material Fact As To Whether Plaintiff Was Able To Perform The Essential Functions Of Her Position With Or Without A Reasonable Accommodation

As an initial matter, there exists a material dispute as to what the "essential duties" of the job were. While "essential duties and responsibilities" are clearly laid out in the Foster Care Case Manager Job Description, Defendant instead chooses the rely on an abbreviated list laid out in a proposed contract between Defendant and the State of Missouri. (DSUMF ¶24; PSAUMF ¶1; Def. Ex. 3, 11).

Although an employee retains the ultimate burden of persuading the trier of fact that he/she can perform the essential functions of a position, "much of the information which determines those essential functions lies uniquely with the employer." *Benson v. NW Airlines, Inc.*, 62 F.3d 1108, 1113 (8th Cir. 1995). Essential functions of a position are the fundamental duties of the job, but not its marginal functions. *Canny v. Dr. Pepper/Seven-Up Bottling Grp., Inc.*, 439 F.3d 894, 900 (8th Cir. 2006). Evidence of whether a job function is essential includes, but is not limited to:

> (1) the employer's judgment as to which functions are essential;
> (2) written job description;
> (3) amount of time spent on the job performing the function;
> (4) consequences of not requiring the incumbent to perform the function;
> (5) terms of a collective bargaining agreement;
> (6) work experience of past incumbents in the job; and/or
> (7) current work experience of incumbents in similar jobs.

29 C.F.R. § 1630.2(n)(3).

*First Factor*: Defendant argues the proposed contract between Defendant and the State of Missouri state the "essential duties" of a Foster Care Case Manager. (DSUMF ¶24). While Defendant alleges that "fourteen of the nineteen job duties must be performed away from home," Defendant fails to support such an assertion with any evidence. (Def. Sugg. In Supp., p. 12; DSUMF ¶24). Defendant cannot point to a single employee who testified that the arbitrarily chosen fourteen job duties *must* be performed outside the home. Furthermore, Plaintiff was still capable of working away from her home at times and in fact did work away from her home even when she had the accommodation. (PSAUMF ¶¶16-17, 27).

*Second Factor*: The Foster Care Case Manager Job Description plainly states the essential duties which Plaintiff was to perform. (PSAUMF ¶1; Def. Ex. 3). This list of essential job duties provides greater information as to what Plaintiff's job actually entailed and what was

28

required of her during her employment. (Def. Ex. 3). Many of the essential duties included in the job description that are not included in the proposed contract Defendant relies on can be performed at home including data entry, documentation, maintaining client files, coordinating necessary services, communicating with all parties involved, etc. (Def. Ex. 3). In fact, Defendant provided portable computers and cell phones in part to give employees the ability to work from home. Additionally, other Foster Care Case Managers testified that they and others commonly worked from home and could perform the same tasks at home that could be done in the office. (PSAUMF ¶¶5-6).

*Third Factor*: As to the events Foster Care Case Managers needed to attend outside the home or office such as court hearings and 72-hour meetings, these types of events did not occur very often. (PSAUMF ¶7). Therefore, it would follow that such events did not take up a large amount of time of Foster Care Case Manager's tasks overall.

*Fourth Factor*: Plaintiff was not requesting to not perform any of the essential functions of her job therefore this factor is not an issue. Plaintiff was simply requesting to work from home when needed and for time off related to her pregnancy-related medical condition. (DSUMF ¶¶38, 44; PSAUMF ¶¶17-18, 25-27). Plaintiff would have been able to do the events that could not occur in the client's home or office, as such events did not occur very often, and Plaintiff would have been able to work from home for many of the other job duties she was responsible for carrying out. (PSAUMF ¶¶1, 5-7, 12).

*Fifth Factor*: There is no collective bargaining agreement.

*Sixth Factor*: Other Foster Care Case Managers testified that they and others commonly worked from home and could perform the same essential tasks at home that could be done in the office. (PSAUMF ¶¶5-6). While there were some tasks that could not be done in the home (such

as court appearances or home visits), Plaintiff would have been able to attend those when needed as she was doing just days before her termination. (PSAUMF ¶¶7, 12, 27). Plaintiff was still meeting her obligations, performing the essential duties of her job, and serving her assigned families up to her termination.

*Seventh Factor*: In line with past practices, it would follow that Foster Care Case Managers still commonly work from home. (PSAUMF ¶¶5-6). In addition, Foster Care Case Managers may be working from home more than ever due to the COVID-19 global pandemic.

Upon review of the relevant factors above, it must then be determined if Plaintiff could perform her essential job duties with or without a reasonable accommodation. As stated previously, Plaintiff requested to work from home and/or time off due to her serious medical condition. (DSUMF ¶¶38, 44; PSAUMF ¶¶9-11, 17-18, 25-27). While Defendant initially granted Plaintiff the ability to work from home for a time, Defendant quickly made the decision that such accommodation was no longer an option. (PSAUMF ¶¶13, 38-46). Further, Defendant flat out denied Plaintiff any time off for her serious medical condition and neither offered nor investigated as to any other accommodations that might have assisted Plaintiff with her pregnancy-related medical condition. (PSAUMF ¶¶20-24). Plaintiff's supervisor did not even know what a reasonable accommodation was. (PSAUMF ¶22).

While the accommodations Plaintiff requested during her employment were reasonable and had been used to assist other Foster Care Case Managers and employees of Defendant, "[w]hether an accommodation is reasonable is a request of fact to be decided by a jury." *EEOC*, 491 F.3d at 796.

Defendant alleges that Plaintiff could not have possibly performed her essential job duties with or without an accommodation, as she failed to do a home visit and two-family support team

30

meetings listed on her calendar due to her January Hospitalization. (DSUMF ¶¶14-15). Plaintiff testified that although events were written in her calendar, they were not necessarily events she was required to attend; Plaintiff had voluntarily written down events from other Foster Care Case Managers' calendars so she could observe, as she was still in training at the time of her termination. (PSAUMF ¶¶8, 47). Plaintiff was still in training, still observing and attending other Foster Care Case Managers' visits/meetings, and still attending office meetings and other required events at the time of her termination. (PSAUMF ¶¶8, 47).

While Plaintiff admits that there are some tasks that need to be performed outside the home, an accommodation could and would have allowed Plaintiff to perform the essential functions of her job – as Plaintiff only requested to work from home when needed and time off when her symptoms rendered her unable to work. (PSAUMF ¶¶9-11, 17-18, 25-27). As multiple people testified, Defendant allowed Foster Care Case Managers to work from home. (PSAUMF ¶¶5-6). Further, Foster Care Case Managers were capable of doing the same tasks at home that could be done in the office. (PSAUMF ¶¶5-6). Plaintiff was not requesting to work from home permanently or take an unlimited number of days off – Plaintiff simply requested to work from home when needed and time off due to her serious medical condition. (PSAUMF ¶¶9-11, 17-18, 25-27).

Based on the above, a finder of fact could determine Plaintiff could have performed her essential job duties with or without a reasonable accommodation and as a result, such a determination must be made by a jury.

### C. There Are Genuine Issues Of Material Fact As To Whether Defendant Was Able To Accommodate Plaintiff

As previously stated, Defendant's argument that Plaintiff only requested to work from home is disingenuous. Defendant goes further to state that what Plaintiff really needed was an "unlimited absentee policy" and that such a request is unreasonable. Again, a genuine issue of material fact exists, as Plaintiff believes that her requested accommodations were not only reasonable but were used by Defendant to assist other employees in completing their essentially job duties. "Whether an accommodation is reasonable is a request of fact to be decided by a jury." *EEOC*, 491 F.3d at 796.

Defendant cites to *Lipp v. Cargill Meat Sols. Corp.* in accusing Plaintiff of possibly seeking/requiring an unreasonable accommodation such as "indefinite period time off." 911 F.3d 537 (8th Cir. 2018). The Eighth Circuit rightfully decided *Lipp*, in that after taking approximately nine months (195 days) of unplanned leave unrelated to her medical condition and then needing additional time off for her medical condition the very same year, it was clear Lipp could not perform the essential function(s) of her job due to her excessive absences. *Id*. In coming to this conclusion, the Eighth Circuit relied on *Schierhoff v. GlaxoSmithKline Consumer Healthcare, L.P.*, involving an employee who missed 172 days of work and therefore unable to perform his job. 444 F.3d 961 (8th Cir. 2006).

There is a stark contrast between *Lipp*, *Schierhoff*, and the case before this Court. While Lipp and Schierhoff missed 195 and 172 days respectively, Plaintiff only missed a few days at the time of her termination. While the bulk of Lipp's unplanned leave and at least part of Schierhoff's was for personal reasons, Plaintiff's limited need for time off was strictly due to her pregnancy-related medical condition. See *Lipp*, 911 F.3d at 541-42; *Schierhoff*, 444 F.3d at 964.

There is no dispute that Defendant could have (and should have) accommodated Plaintiff. Defendant allowed Foster Care Case Managers to work from home, including Plaintiff for a

32

time. (DSUMF ¶¶37-38, 44; PSAUMF ¶¶5-6, 13). Defendant has previously reassigned job duties to other employees temporarily when an employee was sick or out for a period of time (PSAUMF ¶43). While Defendant attempts to dispute such abilities, the requested accommodations were possible, reasonable, and Defendant previously provided such accommodations.

### D. Plaintiff Was Qualified To Do Her Job As A Foster Care Case Manager Under Title VII

Defendant summarily states that Plaintiff was not qualified for her job without providing any substantive evidence. As part of Plaintiff's Title VII sex discrimination claim, she must prove that she was qualified for her position. *See Shaffer v. Potter*, 499 F.3d 900, 905 (8th Cir. 2007). Plaintiff need only demonstrate that she met the "minimum qualifications" for the position. *McCullough v. Real Foods, Inc.,* 140 F.3d 1123, 1126 (8th Cir. 1998). Plaintiff does not need to show that she performed her job satisfactorily, only that she had the basic skills necessary for the job held. See *Arnold v. Nurs. & Rehab. Ctr. at Good Shepard, LLC*, 471 F.3d 843, 846 (8th Cir. 2006) (the Court stated that a plaintiff is "qualified" by showing only that she "possess the basic skills necessary for the performance of the job").

When Plaintiff was hired, both Plaintiff and Mary Turner signed the Foster Care Case Manager job description, indicating Plaintiff was notified of the job duties but also that Plaintiff and Defendant acknowledged that Plaintiff met all of the qualifications for the Foster Care Case Manager position. (PSAUMF ¶¶1-4; Ex. 14-16). As a preliminary requirement, Plaintiff had received a Bachelor's degree. (PSAUMF ¶2; Ex. 15). Plaintiff also had at least one year of prior experience in providing community-based or case management services, as indicated by her previous employment with CEDARS Youth Services as a Family Support Specialist and

33

Integrated Life Choices as a Direct Support Professional. (PSAUMF ¶2; Ex. 14). Plaintiff also met all other requirements, including a valid driver's license, auto insurance, and certifications. (PSAUMF ¶3; Ex. 16).

Defendant may attempt to confuse the issue by alleging that Plaintiff's need to work from home, need for time off, or alleged no call no show(s) deem Plaintiff unqualified for her position – however these are allegations on which Defendant claims to have based a decision to terminate Plaintiff, not on which it failed to hire her for lack of qualifications. See *Davenport v. Riverview Garden Sch. Dist.*, 30 F.3d 940, 944 (8th Cir. 1994).

Not only was Plaintiff qualified for the Foster Care Case Manager position but in addition, Defendant has never made any indication that Plaintiff was not qualified for her position. Therefore, it is undisputed Plaintiff met the qualifications and basic skill necessary to hold Defendant's Foster Care Case Manager position.

### E. Genuine Issues of Fact Exist Concerning Whether Defendant's Proffered "Legitimate, Non-Discriminatory" Reason For Plaintiff's Termination Is Pretextual

If an employer sets forth a non-discriminatory reason for the adverse employment action, a plaintiff can prevail if he/she offers evidence of pretext and disbelief of the Defendant's explanation. *Stuart v. GMC*, 217 F.3d 621 (8th Cir. 2000). There are a variety of means by which pretext can be established, including timing and breach of one's own policies or procedures.

Evidence of the temporal connection between the protected activity and the adverse employment action is evidence of pretext. Time considerations become more important the closer the adverse employment action occurs to the protected activity. *EEOC v. Kohler Co.*, 335 F.3d 766 (8th Cir. 2003). A jury could reasonably conclude Defendant's stated reason for

terminating Plaintiff was false and pretext to hide discrimination. See *Kim v. Nash Finch*, 123 F.3d 1046 (8th Cir. 1997).

Here, Plaintiff requested to work from home in January 2017. (DSUMF ¶¶37-38, 44; PSAUMF ¶10). In mid-January 2017, Plaintiff requested time off due to her serious health condition (PSAUMF ¶18; Ex. 1). Due to Plaintiff's pregnancy-related health condition, Plaintiff notified Defendant that she was admitted to the hospital for a then unknown period of time (DSUMF ¶29; PSAUMF ¶35). During this conversation, Plaintiff was also asked if she was pregnant, and Plaintiff responded that she was. (PSAUMF ¶¶35-36). Two days later, Defendant terminated Plaintiff's employment while Plaintiff was still in the hospital suffering from her pregnancy-related medical condition. (DSUMF ¶¶29, 31, 33, 35; PSAUMF ¶¶44-46).

When written policies are not followed, resulting in the termination of an employee, it is yet another indication of pretext and intent that precludes summary judgment. *Young v. Warner-Jenkinson Co., Inc.*, 152 F.3d 1018, 1022-24 (8th Cir. 1998) ("Moreover, the fact that Warner-Jenkinson may have deviated from its policies, when coupled with the fact that the company mischaracterized Young's most recent absence in a manner giving rise to negative connotations, lends support to an inference of improper motive"); *Ledbetter v. Alltel Corp. Svcs., Inc.*, 437 F.3d 717, 722-23 (8th Cir. 2006) ("An employer's failure to follow its own policies may support an inference of pretext"); *Fitzgerald v. Action, Inc.*, 521 F.3d 867, 874 (8th Cir. 2008) ("We conclude Fitzgerald has shown that the circumstances surrounding his termination contravened Actions normal policies and are evidence Action's proffered explanation was pretextual"); *Jenkins v. Pfizer, Inc.*, 2008 WL 1901206, *5 (W.D. Mo. 2008) ("A plaintiff may make a sufficient showing of pretext by different means, including showing that an employer failed to

follow its own policies"); *Olson v. I.B.M.*, 2006 WL 503291 (D. Minn. 2006) ("This failure to follow company policy, or at least company custom, creates a fact question regarding pretext").

In addition, Plaintiff's own supervisor admitted that she did not know what a reasonable accommodation was. (PSAUMF ¶22). If she did not know what a reasonable accommodation was, how would she have followed the policy to provide one? Defendant's policy states that it "will provide reasonable accommodations given for a work-related injury in order for the employee to return to work" and "retaliation against a person reporting a suspected violation or making a request for reasonable accommodation is prohibited and the retaliator will be subject to disciplinary action." (PSAUMF ¶¶34-35). It appears a number of Defendant's policies were not followed.

Here, the fact that Defendant deviated from its own policies, when coupled with the fact that Defendant knew the reason for Plaintiff's absence due to being provided adequate notice, supports a clear inference of improper motive. Defendant failed to take Plaintiff's verbal statement of her hospitalization as compliance with its Attendance Policy. (PSAUMF ¶¶31, 35, 45-46). Defendant failed to understand that Plaintiff's hospitalization and pregnancy-related medical condition could have qualified as an extenuating circumstance which would have allowed Plaintiff to provide notice to Defendant of her absences later as to when she believed she would be discharged from the hospital and return to work. (DSUMF ¶25; PSAUMF ¶28-30). Defendant also failed to assist Plaintiff in any way regarding her need for time off, including the possibility of approving Paid Time Off ("PTO") which is at the supervisor's discretion in the first 90 days of employment. (PSAUMF ¶32). Defendant ignored Plaintiff's compliance with policy and failed to assist Plaintiff any understanding regarding her pregnancy, pregnancy-related health condition, and attempts to continue working.

36

Plaintiff contends that the disputed issues of fact relative to the issue of pretext preclude summary judgment in this case.

### F. Plaintiff Properly Exhausted Her Administrative Remedies As To Her Retaliation Claim

Defendant argues that Plaintiff failed to exhaust her administrative remedies as to the retaliation claim because she did not check the box on her Charge of Discrimination; however, Plaintiff is not limited to the check-marked boxes in the charge of discrimination form and may include all claims, allegations, and details made in the body of the Charge which may be as wide as the evidence developed in the EEOC investigation. Although Defendant would like to believe that because the retaliation box was not checked that the claim is lost – this is simply not the case.

Parties alleging discrimination because of a protected status are not categorically precluded from asserting additional claims of discrimination that were not included in their charge of discrimination. A plaintiff "may seek relief for any discrimination that grows out of or is like or reasonably related to the substance of the allegations in the administrative charge." *Stuart*, 217 F.3d at 631. "When the EEOC charge alleges facts from which a reader can infer a link between protected activity – for example, a complaint about perceived discriminatory treatment – and a subsequent adverse employment action, a retaliation claim asserted in a subsequent lawsuit will be 'reasonably related' to the EEOC charge." *Williams-Raynor v. Ark. Dep't of Health*, 2017 WL 1017636 (E.D. Ark. Mar. 15, 2017).

To state a claim of retaliation under the ADA, a plaintiff must establish that she "engaged in a protected activity, suffered an adverse employment action, and that there is a causal connection between the two." *Heisler v. Metro. Council*, 339 F.3d 622, 632 (8th Cir. 2003). The

37

Eighth Circuit considers a request for accommodation a protected activity under the ADA for a retaliation claim. *Id.* at 631-32. In *Williams-Raynor*, the plaintiff included facts in her charge regarding complaints to management of disparate treatment and alleged she was fired two days after making the complaints. 2017 WL 1017636, at *6. The court determined that, although Williams-Raynor did not check the retaliation box or use the term "retaliation", there was enough information to allege the prima facie elements for a retaliation claim – (1) engaging in a protected activity, and (2) suffering an adverse employment action – and that the plaintiff had properly exhausted her administrative remedies. *Id*.

While Plaintiff's Charge does not have "retaliation" checked on the face of the Charge, the substance of Plaintiff's Charge included enough facts and information for a retaliation claim to grow out of the allegations included. Plaintiff states in her Charge, "[a]round January 1, 2017, I began to experience a medical condition due to my pregnancy and went to the emergency room to be treated. I informed my employer that I had visited the emergency room and was given permission to work from home." Def. Ex. 10, Ex. A. It can reasonably be inferred that Plaintiff requested to work from home due to her medical condition related to her pregnancy. *Id.* Plaintiff also states the same in her Complaint. Def. Ex. 10, ¶¶66-67.

Following Defendant's permission allowing Plaintiff to work from home as stated in her Charge, Plaintiff then provides details regarding her termination that occurred the very same month. Def. Ex. 10, Ex. A. Similar to *Williams-Raynor*, Plaintiff's Charge provided the EEOC and Defendant with sufficient notice of a retaliation claim, as Plaintiff's Charge alludes to the prima facie elements of retaliation – (1) engaging in a protected activity (requesting an accommodation), and (2) suffering an adverse employment action (termination).

38

Therefore, Plaintiff properly exhausted her administrative remedies as to her ADA

retaliation claim and summary judgment should be denied.

> ### G.  There Are Genuine Issues of Material Fact Regarding The Causal Relationship Between Plaintiff's Request For An Accommodation and Plaintiff's Termination

To state a claim of retaliation under the ADA, a plaintiff must establish that she "engaged

in a protected activity, suffered an adverse employment action, and that there is a causal

connection between the two." *Heisler*, 339 F.3d at 632. The Eighth Circuit considers a request

for accommodation a protected activity under the ADA for a retaliation claim. *Id.* at 631-32.

"An employee can establish a causal link between her protected activity and the adverse

employment action through 'the timing of the two events.'" *Hite v. Vermeer Mfg. Co.*, 446 F.3d

858, 866 (8th Cir. 2006) (internal citation omitted). Thus, causal connection may be met by

"proof that the discharge followed the protected activity so closely in time as to justify an

inference of retaliatory discharge." *Schweiss v. Chrysler Motors Corp.*, 987 F.2d 548, 549 (8th

Cir. 1993); *Couty v. Dole*, 886 F.2d 147 (8th Cir. 1989) (discharge thirty days after protected

activity was sufficient temporal proximity for causal connection); *Keys v. Lutheran Family &

Children's Servs. of Mo.*, 668 F.2d 356 (8th Cir. 1981) (less than two months sufficient proximity

for causal connection).

Defendant cites to *Hill v. Walker* for the proposition that ten days between a request for

accommodation and termination is insufficient to establish causation, however Walker testified

that the decision to terminate Hill was made one day prior to the accommodation request –

making all the difference. 737 F.3d 1209, 1219 (8th Cir. 2013).

Here, Plaintiff requested a reasonable accommodation in early January 2017. (PSAUMF

¶10). In requesting to work from home, Plaintiff began supplying doctor's notes at Defendant's

request. (DSUMF ¶38; PSAUMF ¶¶17, 25-26; Ex. 12). On January 13th, Plaintiff requested time off due to her serious health condition. (PSAUMF ¶18; Ex. 1). On January 16th, Plaintiff completed signing up for health benefits scheduled to begin February 1st. (PSAUMF ¶19; Ex. 18). On January 23rd, Plaintiff notified Defendant that she was in the hospital and upon being asked by her supervisor whether she is pregnant, Plaintiff responded yes. PSAUMF ¶¶35-36). On January 25th, a mere two days later, Plaintiff was terminated. (DSUMF ¶¶29, 31, 33, 35; PSAUMF ¶¶45-46). In support of temporal proximity, not only did Plaintiff request the reasonable accommodations of working from home (early January) and time off for a serious health condition (January 13th), but two days after affirming to her employer that she was pregnant – Plaintiff was terminated.

Therefore, there is sufficient evidence to demonstrate retaliation and certainly for a jury to determine there was a causal connection between the protected activity and adverse employment action.

## VI.    CONCLUSION

Apart from whether Plaintiff was disabled, which Defendant appears not to dispute, there is a disputed issue of material fact surrounding virtually every other issue. This is the exact type of fact-intensive employment dispute for which summary judgment is particularly inappropriate.

WHEREFORE, Plaintiff requests that Defendant's Motion for Summary Judgment be denied.

Respectfully submitted,

**Burkhart Law, LLC**

*/s/ Brandon D. Burkhart*
Brandon D. Burkhart #65815
4233 Roanoke Road, Suite 100
Kansas City, Missouri 64111
Phone: (816) 945-6467
Facsimile: (816) 945-6314
brandon@burkhartlegal.com

### CERTIFICATE OF SERVICE

I hereby certify that on this 29th day of April, 2021, a copy of the foregoing was filed electronically via the Court's ECF system which will send a notice of electronic filing to the following attorneys of record:

Daniel Wooten
ATTORNEY FOR DEFENDANTS

*/s/ Brandon D. Burkhart*
ATTORNEY FOR PLAINTIFF