IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| SHELBIE DAWN SCHWEITZER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 6:19-cv-03240-MDH |
| ) | |
| PREFERRED FAMILY HEALTHCARE, INC., ) | |
| and SPRINGFIELD PARTNERS, LLC, ) | |
| ) | |
| Defendants. ) | |

## ORDER

Before the Court are cross motions for summary judgment. Defendant Preferred Family Healthcare, Inc. ("Preferred") moves for summary judgment on all counts in Plaintiff's Complaint. (Doc. 129). Plaintiff's Complaint brings the following claims: Count I: Title VII - disparate treatment based on sex; Count II: ADA – failure to accommodate; Count III: ADA - disparate treatment based on disability or perceived disability; and Count IV: ADA - retaliation. Defendant argues Plaintiff was not a qualified individual with a disability, with or without a reasonable accommodation; that she could not perform the essential functions of her job as a foster care manager; and that there was no reasonable accommodation even if she was a qualified individual with a disability. Finally, Defendant argues Plaintiff was terminated for legitimate, non-discriminatory reasons.

Plaintiff moves for partial summary judgment on Count I: Title VII - disparate treatment based on sex; Count II: ADA - failure to accommodate; and Count III: ADA - disparate treatment based on disability or perceived disability. (Doc. 133). Plaintiff alleges that while she was employed by Preferred, she discovered she was pregnant, suffered from severe nausea and vomiting, which led to a formal diagnosis of hyperemesis gravidarum, and was ultimately admitted

to the hospital requiring a feeding tube for her medical condition. Plaintiff states she was fired during her hospitalization. Plaintiff argues she notified Preferred of her serious medical condition, requested time off as an accommodation which was denied, and after notifying Preferred of her hospitalization due to her serious medical condition was terminated. Plaintiff moves for summary judgment arguing it is undisputed Plaintiff was pregnant, qualified for the position of Foster Care Case Manager, suffered an adverse employment action, was disabled under the ADA, and requested an accommodation. Plaintiff claims Defendant knew of her disability and did not in good faith assist Plaintiff in seeking a reasonable accommodation. Plaintiff moves for summary judgment on elements 1-2 of Counts I and II and element 1 of Count III.

## BACKGROUND

Plaintiff was employed as a foster care case manager for Preferred from November 7, 2016 to January 25, 2017. During this time, she was a new hire in training. Initially, Cyndi McDaniel was Plaintiff's immediate supervisor. Rebecca Allee became Plaintiff's immediate supervisor "sometime" in 2016. Plaintiff was required to report all personnel issues to Allee as her immediate supervisor. For purposes of Plaintiff's claims, Allee's supervision of Plaintiff is the most relevant.[1]

Preferred's foster care case managers were allowed to perform some of their work from home, including Plaintiff. However, their job duties also included responsibilities that could not be performed at home. Plaintiff's written job description, in part, required her to work "in a typical

---

[1] Consistent with the numerous discovery disputes the parties have raised with this Court during the discovery phase of this case, the parties now dispute nearly all the statement of facts provided by the other side in the summary judgment briefing. Somehow this includes disputes over written policies, direct testimony of the plaintiff and witnesses, and basic facts such as job descriptions and events scheduled on calendars. For purposes of the Court's summary judgment analysis, the Court has considered the facts presented in a light most favorable to the nonmoving party. The Court has also disregarded facts it has deemed to be irrelevant to the disposition of the motions for summary judgment.

2

office setting, the homes of clients and other foster families, community, and within the offices of community professionals." Plaintiff's written job description also made her "responsible for the safety of and services to children in foster care and their families," and in order to discharge her duties as a foster care case manager, she was required to make home visits. Plaintiff conducted home visits in November 2016 and testified home visits happened "quite a bit" in her position. In addition, attending Family Support Team meetings ("FST") was also part of her job duties and the meetings usually occurred at Preferred's office or at an attorney's office. Also, within 72 hours from a child being removed from a biological home, a foster care case manager, such as Plaintiff, was required to meet the family with the FST and those meetings typically took place at Preferred's offices or a legal office. As part of Plaintiff's job she could also be called upon to testify at court during a termination of parental rights court hearing. As a result of these job duties, a foster care manager could not perform her job entirely from home.

Shortly after beginning her employment, Plaintiff discovered she was pregnant. The parties dispute when certain Preferred employees became aware of Plaintiff's pregnancy, but at a minimum Plaintiff's initial supervisor knew Plaintiff was pregnant. Defendant contends Allee was not aware of Plaintiff's pregnancy until January 23, 2017. However, it appears undisputed Allee was aware Plaintiff was suffering from conditions that required her OB/GYN to state she needed time off work. While Defendant denies Allee knew Plaintiff was pregnant, it is admitted Allee was aware Plaintiff was dealing with symptoms and health concerns that required her to take time off work. This is evidenced by the doctor's notes provided to Preferred.

Shortly after discovering she was pregnant Plaintiff became very ill. Plaintiff states she was vomiting over twenty times per day, suffering from dehydration, and weight loss. Plaintiff alleges she had hyperemesis gravidarum, a pregnancy related condition that caused her symptoms.

3

Defendant argues that the testimony offered by Dr. Kidder, the Plaintiff's own testimony, and the exhibits are not admissible to support Plaintiff's assertions she suffered from this condition and should be stricken.

Plaintiff's physician, Dr. Kidder, was deposed. Plaintiff attaches a couple pages from his deposition in which he testified that Plaintiff's pregnancy was complicated by hyperemesis gravidarum, that he issued work releases for Plaintiff, that she was incredibly ill, and that she was admitted to the hospital to get a feeding tube as a result of significant weight loss during her first trimester.

On December 30, 2016, Plaintiff visited the ER for her pregnancy related symptoms. Plaintiff states she continued to have symptoms after that visit. On January 2, 2017, Allee gave employees, including Plaintiff, the option to work from home. Plaintiff requested and was granted the ability to work from home. Plaintiff informed Allee that her doctor had advised her to remain off work but that Plaintiff planned to work from home when she could, which was allowed.

On January 5, 2017, Plaintiff met with Allee at Preferred's office to discuss Plaintiff's performance, assigned cases, working from home, and some of Plaintiff's pregnancy symptoms, including severe vomiting and nausea. While Defendant does not dispute that this meeting occurred, it objects to Plaintiff's statement that the discussion included "pregnancy related" medical conditions and only discussed severe nausea and vomiting and the ER visit. Again, Preferred denies Allee knew Plaintiff was pregnant but admits Plaintiff's symptoms were discussed.

On January 9, 2017, Plaintiff provided a doctor's note from Primrose OB/GYN indicating that Plaintiff needed to remain off work from January 1, 2017 to January 14, 2017. Plaintiff was released from work on those days. Plaintiff contends during that time she worked when she could

4

Case 6:19-cv-03240-MDH   Document 165   Filed 11/23/21   Page 4 of 17

and attended meetings in the office and with her assigned families.  Defendant argues Plaintiff did not enter any time sheets for work performed after January 9, 2017.

On January 13, 2017, Plaintiff submitted a request for leave for a serious health condition under the FMLA.[2]  On January 16, 2017, Plaintiff again submitted a doctor's note requesting time off work on January 16, 2017 from her OB/GYN.  On January 16, 2017, Plaintiff also signed up for Defendant's health insurance and disability benefits that were to begin on February 1, 2017.  On January 16, 2017, Plaintiff's request for FMLA was denied.  Plaintiff was informed she did not qualify for FMLA.  Plaintiff contends Defendant failed to start an interactive process to seek a reasonable accommodation for her, never asked her or provided her an accommodation, and that her supervisor was not aware of the meaning of reasonable accommodation under Preferred's policy.

Plaintiff states she worked part of the day on January 17, 2017.  Defendant argues the only "work" performed by Plaintiff was submitting her time records via email.  Again, Defendant contends Plaintiff did not submit any time for work performed after January 9, 2017.

On January 17, 2017, Plaintiff's doctor again issued a note, which Plaintiff provided to Defendant, advising that Plaintiff should remain off work from January 17 through January 20, 2017.  Defendant argues it never received this note.  However, Defendant acknowledges that the

---

[2] As is consistent throughout the summary judgment briefing, Defendant's response is baffling. This exhibit is Defendant's own document and is an FMLA form filled out by its former employee. The document specifically states "On January 13, 2017, you informed us that you needed leave beginning on <u>unknown at this time</u> for: … your own serious health condition…" Defendant somehow responds that this fact is "controverted" because the exhibit does not support the factual proposition that Plaintiff made a request to Defendant for "some time off" for a serious health condition.  The Court does not appreciate Defendant's refusal to admit documents that clearly speak for themselves. Zealous advocacy is consistent with quality legal representation. However, denying the obvious and contesting facts and issues without a reasonable basis is not zealous advocacy and is not a necessary or acceptable part of zealous advocacy.

5

note says that Plaintiff had missed work numerous days in the past two weeks due to extreme nausea and vomiting and that she was vomiting 30-45 minutes all night long. Despite Defendant stating it did not receive the doctor's note, Plaintiff was not disciplined for remaining off work January 17, 2017 through January 20, 2017. Defendant states Plaintiff was a no call/no show during this time, but that Plaintiff was not disciplined because "they were trying to work with her." Plaintiff contends she provided the doctor's note to Preferred.

On January 23, 2017, Plaintiff was hospitalized. Plaintiff notified Allee on the phone that she was in the hospital, that she was pregnant, and that there was "something regarding her illness." Allee informed Plaintiff during this phone call that Plaintiff would need to provide documentation from her doctor. Plaintiff remained in the hospital through January 27, 2017. Allee contends it was during the January 23, 2017 phone call that she first became aware Plaintiff was pregnant.

On January 25, 2017, Allee called Plaintiff, who remained in the hospital, to inform Plaintiff that she was terminated. Allee states she terminated Plaintiff for failure to communicate with her on January 24. Allee states Plaintiff was a no call/no show for work on the 24th and 25th because she failed to call in and report she was sick. Allee informed Plaintiff that Preferred could not hold her position but that if Plaintiff turned in a doctor's note for her hospitalization that she would be eligible for rehire once she delivered the baby. It is undisputed Plaintiff was pregnant and in the hospital at the time of her termination. Plaintiff delivered her baby on July 24, 2017. At the time of Plaintiff's termination Plaintiff was still in training.

Preferred's handbook states: "notification by the employee to his or her immediate supervisor is required prior to the day of absence and no later than their scheduled start time beginning the day of absence, except where extenuating circumstances exits." The policy does not specifically require the employee to call on a day to day basis. The handbook further states:

6

should an employee need to be hospitalized, the employee should inform his/her supervisor, or if unavailable another member of management, as to the length of estimated stay in the hospital and/or period of required recuperation from illness. (A verbal statement will be permitted as long as the written physician statement is provided upon return to work.)

**STANDARD**

Summary judgment is proper where, viewing the evidence in the light most favorable to the non-moving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Reich v. ConAgra, Inc.*, 987 F.2d 1357, 1359 (8th Cir. 1993). "Where there is no dispute of material fact and reasonable fact finders could not find in favor of the nonmoving party, summary judgment is appropriate." *Quinn v. St. Louis County*, 653 F.3d 745, 750 (8th Cir. 2011). Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant meets the initial step, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To satisfy this burden, the nonmoving party must "do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

A question of material fact is not required to be resolved conclusively in favor of the party asserting its existence. Rather, all that is required is sufficient evidence supporting the factual dispute that would require a jury to resolve the differing versions of truth at trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248-249. Further, determinations of credibility and the weight to give evidence are the functions of the jury, not the judge. *Wierman v. Casey's General Stores, et al.,* 638 F.3d 984, 993 (8th Cir. 2011).

**DISCUSSION**

7

**Motions to Strike**

Defendant has two pending motions to strike. The first motion moves to strike Plaintiff's Exhibits 1 and 14 attached to Plaintiff's Motion for Partial Summary Judgment and Plaintiff's Statement of Uncontroverted Material Facts paragraphs 12, 13, and 14. (Doc. 139). Plaintiff's Exhibit 1 is Plaintiff's Complaint. Defendant argues the Complaint is not verified and as a result cannot be used to support her motion for partial summary judgment. The specific paragraphs Defendant argues the Complaint is used to support are Paragraphs 12, 13 and 14. These paragraphs reference Plaintiff's pregnancy related medical condition, hyperemesis gravidarum, and the symptoms Plaintiff experienced as a result of this condition. Defendant moves to strike the Complaint as support of those "facts" and to also strike these paragraphs in her statement of material facts.

Exhibit 14 is a document entitled "Hyperemesis Gravidarum (Nausea & Vomiting of Pregnancy)." Defendant argues this exhibit contains impermissible hearsay, has not been authenticated and violates the Federal Rules of Evidence for numerous reasons. Defendant also moves to strike Paragraphs 12, 13, and 14 of Plaintiff's Statement of Uncontroverted Material Facts because of the inadmissibility of this exhibit. However, paragraphs 12, 13, and 14 are also supported by the deposition testimony of Plaintiff's medical provider and by her medical records. Plaintiff argues Exhibit 14 was a document produced to Defendant pursuant to a subpoena they issued to Plaintiff's medical provider and was produced with a business record affidavit. Plaintiff further points out that Defendant uses documents from these medical records in support of its arguments. Regardless of the admissibility of Exhibit 14 at this stage of the proceedings, the Court will not strike paragraphs 12, 13 and 14 because they are supported by other evidence in the record.

8

Further, the Court will not strike Plaintiff's Complaint as an exhibit. The motion is **DENIED**. (Doc. 139).

Defendant's second motion to strike moves to strike all portions of Plaintiff's Suggestions in Opposition to Defendant's Motion for Summary Judgment "that reference or rely upon any allegations, directly or indirectly, that the off-work slips Plaintiff claims to have given to Defendant constituted requests for accommodation of time off from work, that the Court not consider the Off-Work Slip Requests for this purpose, that the Court strike any portion of Plaintiff's Suggestions in Opposition to Defendant's Motion for Summary Judgment that relies upon Plaintiff's unverified Complaint…" (Doc. 152). Defendant argues that this claim, or argument, was raised for the first time in the Motion and should be stricken. Defendant contends that the Complaint only references a request to work from home and does not reference a request for time off. Defendant also points to the interrogatory answer that discusses Plaintiff's request to work from home and an FMLA request. Defendant argues because there was no mention of other requests for an accommodation Plaintiff cannot discuss the doctor's notes for the first time in her summary judgment motion.

A review of Plaintiff's Complaint shows that Plaintiff specifically references the physician notes provided to Preferred advising Plaintiff to remain off work. Plaintiff alleges the date of each of these notes that were issued by her doctor and then provided to Preferred throughout her Complaint. There is no basis to strike Plaintiff's suggestions or arguments. The Court does not appreciate the filing of motions that appear to be frivolous and detract the Court from focusing on the relevant issues presented in the case. The motions to strike, which include repetitive arguments already raised in the summary judgment briefing, waste both the Court and the parties' time. The Court **DENIES** Defendant's motion. (Doc. 152).

9

**Count I - Title VII – Disparate Treatment Based On Sex**

Count I of Plaintiff's Complaint alleges disparate treatment based on sex pursuant to Title VII. In order to prevail on this claim Plaintiff must establish that: 1) she belongs to a protected class; 2) she was qualified for her position; 3) she suffered an adverse employment action; and 4) that she received different treatment than similarly situated employees who did not belong to a protected class. *Rester v. Stephens Media, LLC,* 739 F.3d 1127, 1130 (8th Cir. 2014). Plaintiff must either present direct evidence of discrimination or indirect evidence from which discrimination may be inferred. *Shaffer v. Potter*, 499 F.3d 900, 903 (8th Cir. 2007).

Plaintiff seeks partial summary judgment on elements 1-3, contending these are undisputed. Plaintiff argues the remaining issue, that she was treated differently than similarly situated employees, involves factual issues for the jury. Defendant moves for summary judgment on Count I arguing Plaintiff was not qualified to perform the essential functions of her position. Defendant further argues, even if she was qualified to perform her job, she cannot produce evidence of pretext to show she was not terminated for legitimate, non-discriminatory reasons.

First, Plaintiff argues she was qualified for her position because she met the minimum qualifications and had the basic skills necessary for the job. The parties do not dispute that Plaintiff was qualified for the job based on her education, prior experience, previous employment and other certifications. Rather, the parties' argument centers on whether Plaintiff was qualified to do the job based on her alleged request to work from home and her ability, or alleged inability, to attend home visits or other meetings outside of her home. Plaintiff argues she was given permission to work from home and could still perform the essential functions of her job. She further argues that Defendant could have provided her a reasonable accommodation based on her caseload that would have made it possible for her to perform her job. Plaintiff also notes she was still in training and

had a small caseload at the time of her pregnancy related medical condition. Plaintiff believes Defendant could have made an accommodation during this time to allow her to perform her job.

In opposition, Defendant argues Plaintiff obtained three work releases that advised her to remain off work between January 1 and January 20, 2017. Defendant contends Plaintiff's inability to work made it impossible for her to perform her job. While contested by Plaintiff, Defendant notes that while Plaintiff was in the hospital on January 24, 2017, she had two family support meetings and one home visit that she missed. Plaintiff disputes that these were her meetings, arguing they may have been meetings she was planning to attend for training and not her actual case assignments. Regardless, Defendant argues that Plaintiff was unable to perform the job functions of a foster care case manager when she was unable to leave her home. Defendant's position is that because Plaintiff could not meet the attendance requirement of her job she cannot be considered qualified. The Court finds there is a question of fact regarding whether Plaintiff was qualified to perform her job based on her pregnancy and pregnancy related illness.

Defendant also contends Plaintiff was ultimately terminated because she was a no-call no-show for work on January 24 and 25, 2017 and that this is a legitimate non-discriminatory reason for her termination. Plaintiff does not dispute that she did not call her supervisor on January 24 or 25 to report her absence. However, on January 23, 2017, Plaintiff called her supervisor and told her she was in the hospital. The parties do not provide any further information regarding what, if any, discussion occurred regarding Plaintiff's hospital stay or her anticipated length of stay. Here, Plaintiff reported her absence on her first day in the hospital. A review of Defendant's written policy does not clearly establish that Plaintiff violated the attendance policy by not calling again on the second day of her absence.

11

Case 6:19-cv-03240-MDH   Document 165   Filed 11/23/21   Page 11 of 17

Defendant's written policy states employees are required to notify their supervisor prior to their absence, "and no later than their scheduled start time beginning the day of absence, except where extenuating circumstances exits."  Here, Plaintiff called on the day she was admitted to the hospital and her hospitalization could be seen as an extenuating circumstance.  Defendant's policy does not specifically require the employee to call on a day to day basis.  In fact, Plaintiff had not been disciplined prior to her termination when she remained off work on January 17 through January 20, 2017, despite Defendant contending she was a no call/no show during this time. Defendant states she was not disciplined at that time because they were trying to work with her. Plaintiff states she provided Defendant with a doctor's note for her absence.  There are questions of fact regarding Defendant's enforcement of its alleged attendance policy and its ultimate termination of Plaintiff.

Further, a plaintiff may show pretext by showing that an employer 1) failed to follow its own policies, 2) treated similarly-situated employees in a disparate manner, or 3) shifted its explanation of the employment decision. *Lake v. Yellow Transp., Inc*., 596 F.3d 871, 874–75 (8th Cir. 2010) (internal citations omitted).  Here, Plaintiff has provided evidence that Defendant failed to consistently follow its own policies.  Defendant's policy may in fact allow for termination if an employee failed to call in and report an absence.  However, it is undisputed Plaintiff called on the first day of her absence when she was hospitalized and Plaintiff had previously been a no call/no show without termination.

It is unclear from the record what, if any, additional conversations Plaintiff had with her supervisor regarding her hospitalization.  Further, Defendant's own policies do not clearly establish that her failure to call on the second or third day of her hospitalization called for immediate termination.  The Court finds Plaintiff has provided evidence to create an issue of fact

12

Case 6:19-cv-03240-MDH   Document 165   Filed 11/23/21   Page 12 of 17

regarding her claims as to whether she was qualified for her position and the reason for her termination. Whether Plaintiff will ultimately prevail is not for the Court to determine at this stage, however the Court finds Plaintiff has provided enough evidence to survive summary judgment on her claim for an alleged violation of Title VII. The Court denies both parties motions for summary judgment on this claim.

### Counts II and III - ADA – Failure To Accommodate and Disparate Treatment

Counts II and III of Plaintiff's Complaint allege Plaintiff was discriminated against based on her disability – hyperemesis gravidarum a pregnancy related condition – in violation of the ADA. To prevail on a discrimination claim under the ADA, Plaintiff must first establish a prima facie case of discrimination by demonstrating: 1) that she was disabled within the meaning of the ADA; 2) that she was qualified to perform the essential functions of the job with or without a reasonable accommodation; and 3) a causal connection between an adverse employment action and the disability." *Oehmke v. Medtronic, Inc*., 844 F.3d 748, 755 (8th Cir. 2016).

Plaintiff may rely on indirect evidence and the Court applies the burden-shifting framework provided in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See Schierhoff v. GlaxoSmithKline Consumer Healthcare, L.P*., 444 F.3d 961, 964 (8th Cir. 2006). If the plaintiff succeeds, "the burden of production then shifts to the employer to show a legitimate, nondiscriminatory reason for the adverse action." *Id.* at 964-65. Defendant must also show it was unable to accommodate Plaintiff. *Gardea v. JBS USA, LLC,* 915 F.3d 537, 541 (8th Cir. 2019). "The burden then returns to the plaintiff to show that the employer's proffered reason was a pretext for discrimination." *Lipp v. Cargill Meat Sols. Corp*., 911 F.3d 537, 544 (8th Cir. 2018).

First, Plaintiff must establish she had a disability. The ADA defines "disability" as "a physical or mental impairment that substantially limits one or more major life activities of [an] individual." *Gardea v. JBS USA*, LLC, 915 F.3d at 541, citing 42 U.S.C. § 12102(1). This includes being regarded as having such an impairment. *Id.* If Plaintiff is disabled then she must show she is a qualified individual under the ADA by proving that she was able to perform the essential functions of her job, with or without reasonable accommodation. *Id.*

"Essential functions of the job are 'fundamental job duties,' and the employer's judgment in this regard is considered 'highly probative.'" *Kammueller v. Loomis, Fargo & Co.*, 383 F.3d 779, 786 (8th Cir. 2004) (citation omitted). The following evidence is relevant in determining whether a job duty is an essential function:

> (1) the employer's judgment as to which functions are essential; (2) written job descriptions prepared before advertising or interviewing applicants for the job; (3) the amount of time spent on the job performing the function; (4) the consequences of not requiring the incumbent to perform the function; and (5) the current work experience of incumbents in similar jobs.

*Id.* (citation omitted). We have "consistently stated that 'regular and reliable attendance is a necessary element of most jobs.'" *Lipp v. Cargill Meat Sols*. Corp., 911 F.3d at 544 (citation omitted).

Defendant argues Plaintiff cannot establish that she could perform the essential functions of her job, with or without a reasonable accommodation, and therefore she is not qualified for her position as a foster care manager under the ADA. For the same reasons set forth above, the Court finds there is a question of fact regarding whether Plaintiff was qualified to perform the job of a foster case manager without or without an accommodation.

Further, to prevail Plaintiff must also show Defendant knew of her disability, that she requested accommodations, that Defendant did not in good faith assist her in seeking

14

accommodations and that she could have been reasonably accommodated but for Defendant's lack of good faith. *Kallail v. Alliant Energy Corporate Servs., Inc.*, 691 F.3d 925, 933 (8th Cir. 2012). Plaintiff argues there is a question of fact regarding whether Defendant could have reasonably accommodated her to be able to perform her job and this Court agrees.

In addition, Plaintiff also submitted an FMLA form, and while she did not qualify for FMLA, she did request time off work. Plaintiff also submitted medical notes from her doctor stating she needed time off and in fact was given some time off. The medical notes do not specify the reason for the requested time off, or the underlying medical conditions. However, Plaintiff argues that the notes were from her OB/GYN and that Preferred knew her medical condition. While Defendant argues one of her supervisor's did not know Plaintiff was pregnant until the hospitalization, a prior supervisor admits she was aware of Plaintiff's pregnancy. The Court finds there are questions of fact as to whether Plaintiff had a disability that could be accommodated and whether Preferred failed to act in good faith to assist her or whether she could have been reasonably accommodated but for Defendant's lack of good faith. For these reasons, summary judgment is denied.

### Count IV - ADA Retaliation

Finally, Defendant moves for summary judgment on Count IV arguing Plaintiff failed to exhaust her administrative remedies with regard to this claim. Defendant states that Plaintiff did not check the box for retaliation in her charge of discrimination and that the word retaliation is not mentioned anywhere in her charge. Plaintiff argues that she included enough facts and information for a retaliation claim to "grow out of the allegations included."

In support of Plaintiff's argument, she cites to her charge of discrimination which states, in part:

> Around January 1, 2017, I began to experience a medical condition due to my pregnancy and went to the emergency room to be treated. I informed my employer that I had visited the emergency room and was given permission to work from home.

Plaintiff specifically argues, from this, "it can be reasonably inferred that Plaintiff requested to work from home due to her medical condition related to her pregnancy."

Plaintiff's charge of discrimination also states:

> I believe that I have been discriminated against due to my sex, female, pregnancy, and disability in that I was discharged in violation of Title VII of the Civil Rights Act of 1964 and the Americans with Disabilities Act, as amended.

Plaintiff contends that her charge of discrimination details that her termination occurred the very same month following Defendant's permission allowing Plaintiff to work from home.

Plaintiff relies on *Williams-Raynor*, an Eastern District of Arkansas opinion, that found that a plaintiff who had not checked the box for retaliation in her charge of discrimination had still put the defendants on notice of a retaliation claim by the entire text of the charge. 2017 WL 1017636, *5-6 (E.D. Ar., March 15, 2017). The district court found that a causal connection could be inferred from her allegations contained in the charge of discrimination. *Id.*

Here, the Court has carefully reviewed the charge of discrimination. Plaintiff failed to check the retaliation box and Plaintiff's narrative description does not specifically mention the word retaliation. However, Plaintiff alleges discrimination and that she was given permission to work from home but was subsequently hospitalized and then ultimately terminated while she was in the hospital. The Court does not make any finding on whether Plaintiff can ultimately prove a retaliation claim but finds that it could reasonably be inferred from Plaintiff's allegations that her request to work from home due to her medical condition was alleged to lead to her retaliatory discharge, that her request for leave could have led to her discharge, or that her call from the

16

hospital indicating she could not work due to a medical condition could have led to her termination. The Court denies Defendant's motion for summary judgment on the retaliation claim.

## CONCLUSION

Wherefore, for the reasons set forth herein, the Court hereby **DENIES** Defendant's Motion for Summary Judgment. The Court further **DENIES** Plaintiff's Motion for Partial Summary Judgment. Whether Plaintiff was disabled, was qualified for her position, requested an accommodation and the other issues raised in the Complaint and summary judgment briefing are questions for the jury. The Court shall set this case for trial in a subsequent Order.

**IT IS SO ORDERED.**

Date: November 23, 2021 /s/ Douglas Harpool
**DOUGLAS HARPOOL**
**United States District Judge**